In brief, my colleagues allow administrative convenience to encroach on due process of law. The requirements of the law and of the rules of evidence are expanded in the majority opinion to permit the department of motor vehicles to observe a practice of documenting essential evidence without the required certification *Page 591 
of authenticity. The rights of the accused are thereby subordinated to the accommodation of the agency officials.
The blanket substitution of a rubber-stamp facsimile signature for the required personal signature in the certification of necessary documentary evidence, while an obvious time-saver and bureaucratic expedience for the department, is, at the same time, a derogation of the requirements of a fair trial. The court should not "rubber-stamp" its approval of this practice. While one is identified by his personal signature, anyone, even without authority, can affix the rubber-stamp facsimile signature of another. It is for this reason that authentication of documentary evidence should be made by personal or authorized signature only.
A review of the trial transcript shows that the defendant was convicted on insufficient evidence of guilt. His operation of a motor vehicle on a public highway was stipulated. Proof of the suspension of his Connecticut driver's license was allowed by state's exhibit A. This document was a multipurpose "Copy Certification" form reading, as completed by insertion, "I hereby certify that the attached is a true copy of the item(s) `x'd' below: [x] Suspension Notice For: Salvatore Verdirome (signed by rubber-stamp facsimile signature) Benjamin A. Muzio, Commissioner of Motor Vehicles." Similarly signed multipurpose certification forms were admitted as state's exhibits B and C. Exhibit B purported to be a true copy of the "Certified Mail Register Salvatore Verdirome # 153561," while exhibit C, allowed as rebuttal evidence for the state, was offered as a true copy of "Security Requirement Notice Salvatore Verdirome." The defendant objected to the admission of these exhibits because they were not signed by *Page 592 
the commissioner of motor vehicles. The court overruled his objections finding (1) that the certifications were properly signed by the commissioner, and (2) that the copies were properly certified under General Statutes 14-3.
The court erred in allowing the improperly certified documents into evidence for the consideration of the jury. General Statutes 14-3
was suitably drafted to meet the convenience of the motor vehicles officials, while at the same time protecting the rights of an accused operator. It recognizes the burden that would be imposed upon the commissioner if his personal signature were required upon all record certifications. It therefore allows certification by other authoritative ranking officials in these terms: "Any certified copy of any document or record of the commissioner, attested as a true copy by the commissioner, deputy commissioner or chief of a division, shall be competent evidence in any court of this state of the facts therein contained."
The majority opinion correctly acknowledges that the signature of the commissioner in his own hand would obviously be sufficient for the attestation of certified documents under General Statutes 14-3. It then goes on to express, without limitation, but as an advance of its ultimate holding, that" [a] signature by means of a rubber stamp would also fulfill the requirement." To support this seemingly unlimited use of a rubber-stamp signature, the majority Opinion cites Deep River National Bank's Appeal, 73 Conn. 341, 346,47 A. 675 (1900), as follows: "In the absence of any express or implied requirement of law that one shall subscribe a writing with his own hand, he may properly sign it by means of such a stamp used by himself or by another at his direction." *Page 593 
Deep River was an appeal from the commissioners' disallowance of certain claims against an estate presented by the appellant there. Letters of the decedent were offered under a statute which provided that "`in actions against the representatives of deceased persons, no acknowledgment or promise shall be sufficient evidence of a new or continuing contract to take the case out of the statute of limitations, unless the same be contained in some writing made or signed by the party to be charged thereby.'" Id., 345-46.
The trial court in that case accepted such offer of evidence after proof that the letters containing the alleged acknowledgments were dictated by the deceased to a stenographer, who, at the direction of the deceased, typed the letters and signed them with the deceased's name by means of a rubber stamp. On appeal the lower court's ruling was affirmed, the court finding that this was sufficient proof that the letters were signed by the deceased, "since in the absence of any express or implied requirement of law that one shall subscribe a writing with his own hand, he may properly sign it by means of such a stamp used by himself or by another at his direction." Id., 346.
In applying Deep River to the prosecution of this case, my colleagues overlooked the rationale of the court for its ruling, expressed in the following terms, which are wholly inapplicable to a criminal proceeding: "In the absence of any evidence to the contrary, the proof thus presented was sufficient to sustain the finding that the letters were dictated by the deceased to the stenographer, and that the latter transcribed them and affixed the signature by direction of [the decedent]. After such proof the letters were properly received in evidence. To render them admissible it was not necessary that it should be proved beyond a reasonable doubt that *Page 594 
they were the letters of [the decedent], but only to introduce evidence which, when uncontradicted, would satisfy all reasonable minds of that fact." Id., 347.
There is no evidence in the present case as to who affixed the rubber-stamp facsimile of the commissioner's signature to the multipurpose certification forms, completed as state's exhibits A, B and C, to establish proof of the suspension of the defendant's driving license. The defendant is not constitutionally required to prove his innocence by showing in the first instance that these documents were not properly signed. It was the burden of the state to prove the proper signature of the commissioner On the documents beyond a reasonable doubt as part of its requirement to establish each and every element of the crime. Further, we have no evidence in the record as to when the rubber-stamp facsimile of the commissioner's signature was applied to these certification forms in each instance. The completed forms are undated. Conceivably they could have been stamped before the completion of their blank spaces, and even before the action of the commissioner in suspending the defendant's license, for administrative convenience and ready use of the forms when needed. The state failed to sustain its burden of proof on these documents in this regard also.
The principles enunciated by the court in -Deep River National Bank's Appeal, supra, for the purposes of that civil action, applied, as my colleagues would do, to the criminal prosecution here, deny the defendant the elements of a fair trial guaranteed under the umbrella of the fourteenth amendment: (1) the presumption of innocence; (2) proof of guilt beyond a reasonable doubt, including such proof of every element of the offense; and (3) due process of law. *Page 595 
The majority opinion attempts to support the documentary evidence by looking to the definition of "commissioner" found in General Statutes 14-1
(8) as including "the commissioner of motor vehicles, the deputy commissioner of motor vehicles, the attorney general and any assistant to the commissioner of motor vehicles designated and authorized by him as hereinafter provided, while such assistant is acting for the commissioner of motor vehicles under such designation." (Emphasis added.) Section 14-3, the statute involved here, specifically designates the deputy commissioner or a chief of a division to act in place of the commissioner in the attestation of a certified motor vehicle record. Beyond that, the allowable substitutions of 14-1 (8) are not authorized by14-3 to act for the commissioner in the performance of this specific duty, unless specifically designated and authorized by the commissioner to act in his stead. As noted earlier, there was no evidence in the court below as to who affixed the commissioner's rubber-stamp facsimile signature to these certifications, or under what authority, or when.
General Statutes 4-8 authorizes each department head to appoint such "employees as may be necessary for the discharge of his duties." Citing Dan M. Creed, Inc. v. Tynan, 151 Conn. 677, 680,202 A.2d 239 (1964), the majority opinion states that such employees may be designated "by him to perform administrative tasks necessary to the discharge of the commissioner's duties." In Dan M. Creed, Inc. v. Tynan, however, the Supreme Court ruled upon specific statutory provisions not now before us. "Section 14-64 gives to the commissioner the power to suspend [dealers' and repairers'] licenses, and 14-110 confers upon him, his deputy, or an assistant designated by him, the power to administer oaths and take testimony. Section 14-110 *Page 596 
does not, however, confer upon that assistant the authority to make decisions [suspending dealers' and repairers' licenses]." Id., 679.
Finally, my colleagues hold that "[p]ublic officials are presumed to have performed their duties until the contrary appears," citing Balch Pontiac Buick, Inc. v. Commissioner of Motor Vehicles, 165 Conn. 559, 568, 345 A.2d 520 (1973). They then conclude: "This presumption permits the inference that the rubber-stamp signature of the commissioner was placed on the certification by an employee of the motor vehicle department duly authorized by the commissioner to perform that function. The documents, therefore, were `attested' as true copies by the `commissioner' as required by the statute for admissibility." Such an inference, allowable in a civil action, cannot be drawn in this or any other criminal prosecution. The phrase in the presumption "until the contrary appears" is offensive to the defendant's constitutional right to due process of law. "[I]t is an explicit shifting of the burden [of proof] to the defendant." State v. Harrison,178 Conn. 689, 696, 425 A.2d 111 (1979).
My colleagues, in their reliance upon Deep River National Bank's Appeal, supra, failed to recognize that an official signature significantly overshadows a private one not only in its constitutional dimensions, but also in its legal consequences. For private transactions, the Uniform Commercial Code, in General Statutes42a-1-201 (39), allows great flexibility in the manner by which a person may identify his writing in this provision: "`Signed' includes any symbol executed or adopted by a party with present intention to authenticate a writing." While a private person, when acting in his own business, may bind himself by a signature which he directs another to make for him, it is a "general doctrine that all public officers must sign their *Page 597 
own name to their own returns and certificates of official acts." Chapman v. Inhabitants of Limerick,56 Me. 390, 393 (1868).
We now turn to the express language of that part of 14-3 under which the documentary evidence was allowed: "Any certified copy of any document or record of the commissioner, attested as a true copy by the commissioner, deputy commissioner or chief of a division, shall be competent evidence in any court of this state of the facts therein contained." "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." General Statutes 1-1 (a). To "certify" means "to confirm or attest often by a document under hand or seal as being true." Webster, Third New International Dictionary. To "attest" means "to witness and authenticate by signing as a witness." Id. "It is the act of signing . . . rather than the addition of the word `attested' that is important." City Lumber Co. v. Borsuk, 131 Conn. 640, 646,41 A.2d 775 (1945). "The significance of a signature appearing on documents . . . lies in the fact that a signature is `the name of a person written with his own hand to signify that the writing which precedes accords with his wishes or intentions.' Webster's Third New International Dictionary 2116. The signature to a writing is placed there, moreover, for the purpose of authenticating it. United States v. Wortman, 326 F.2d 717, 721-22 (7th Cir.); Brown v. State Auto. Ins. Assn. of Des Moines, 216 Minn. 329,337, 12 N.W.2d 712; 80 C.J.S. 1286, Signatures, 1." Fidelity Casualty Co. v. Constitution National Bank, 167 Conn. 478, 491,356 A.2d 117 (1975).
Before a copy of a motor vehicle record may be competent evidence of the facts cited therein in any court, 14-3 requires these preliminary steps: (1) *Page 598 
the witnessing of the accuracy of the copy by the commissioner, his deputy or a division chief, and (2) a certification to that accuracy by the personal signature of such official.
In McGuire v. Church, 49 Conn. 248 (1881), Original process was legally served upon the defendant as garnishee, but the copy left with him in that suit, with the officer's endorsement of his doings thereon, and the certificate of its being a true copy, was signed in the officer's name by the hand of his clerk and did not bear his own signature. After judgment, the plaintiff brought a scire facias proceeding against the garnishee. The trial court rendered judgment against the defendant on his indebtedness to the judgment debtor in the original action. The Supreme Court overruled the judgment against the garnishee, finding no attachment was made. In explanation of its action, the court made these remarks which are relevant to the present case: "The officer who served the original writ of foreign attachment, upon which the present scire facias is founded, left at the usual place of abode of the defendant in that suit, and as the only service made upon the defendant, what purported to be a certified copy of the writ, with his doings indorsed thereon, but his signature was not attached to the document by his own hand but by that of his clerk. An executive officer can no more authorize another to perform an official act which the law requires him to perform, than a justice of the peace can delegate the performance of his judicial duties. The law requires an attestation of the copy by the officer. Webster defines the word `attest' as follows: `To bear witness to; to certify; to affirm to be true or genuine; to make a solemn declaration in words or writing to support a fact; appropriately used for the affirmation of persons in their official capacity, as to attest the truth of a writing, to attest a copy of *Page 599 
record.' Can an officer certify by another that a document is a true copy of the original, any more than he could make oath by another to the same effect? It is clear that there was no attestation of the copy, and consequently no such copy as the law requires or recognizes was left with the defendant in the original suit or at his usual place of abode. It follows therefore that no attachment of the property of the defendant was made in that case, for an important part of the attachment was the leaving with the defendant or at his usual place of abode `a true and attested copy' of the writ." Id., 249-50.
In State ex rel. Drucker v. Reichle, 52 Ohio L. Abs. 94, 96, 81 N.E.2d 735 (1948), a trial judge purported to adopt as his required "signature" on a judgment a rubber-stamp facsimile thereof. The Ohio statute as well as a rule of court required that the journal entry of a judgment be approved by the court in writing before filing with the clerk. In its brief opinion the court held as follows: "While it is true that generally one may adopt as his signature any printed or stamped facsimile copy of his signature and by his conduct be bound thereby, the circumstances here presented are clearly distinguishable from the cases upholding such doctrine. The need for absolute certainty insofar as that is obtainable in preventing error in court records of judgments requires that the statute and the rule of court should be literally complied with." Id., 96.
The defendant is presumed to be innocent until his guilt is established by proof beyond a reasonable doubt under the constitutional guarantees of due process and a fair trial. The prevention of error in his conviction requires that any motor vehicle record offered in proof of his guilt to establish an essential element of the crime be properly certified by the "signature" of one of the departmental officials designated in 14-3. *Page 600 
It is important to note that the purported certifications of the records in this case, state's exhibits A, B and C, are undated. There is no evidence showing when or by whom the facsimile of the commissioner's signature was rubber-stamped on each form. The state's failure to establish by whom and when these certificates were completed and the commissioner's facsimile signature rubber-stamped thereon were additional reasons for the disallowance of this evidence even under the reasoning of my colleagues. One cannot presume that the purported signatures were rubber-stamped after the suspension of the defendant's operator's license and after the completion of the blank insertions. To the contrary, the lack of a date on these exhibits allows a reasonable inference that they were stamped in advance of their actual need and use, and thereafter stocked for future insertion of the description of the record to be "certified" and attached upon order. Such an open-end or blanket form of certification even with a proper handwritten signature would not meet the evidentiary requirements of certified records for admission under 14-3 as competent evidence in a criminal trial.
The pretended certifications of the defendant's motor vehicle records in state's exhibits A, B and C fail to meet the requirements of 14-3 for "competent evidence . . . of the facts therein contained." Without the proper attestation as true copies by the commissioner, there is no prima facie evidence that he actually certified to the genuineness of these records. Without such certification they were improperly admitted as evidence by the trial court for the consideration of the jury. I conclude, therefore, that there was insufficient evidence to support the conviction of the defendant.
I would reverse the judgment of conviction. *Page 601