The PEOPLE of the State of
Colorado, Petitioner,

v.

Frank LESSAR, Respondent.

No. 80SC134.

Supreme Court of Colorado,
En Banc.

May 18, 1981.

Luis A. Lopez, Dist. Atty., Garrett Sheldon, Deputy Dist. Atty., Walsenburg, for petitioner.

J. Gregory Walta, Colorado State Public Defender, James Chavez, Deputy State Public Defender, Trinidad, for respondent.

QUINN, Justice.

We granted certiorari to review a judgment of the district court of Huerfano County reversing a county court conviction for driving while license denied, as proscribed by section 42–2–130(1)(a), C.R.S. 1973 (1980 Supp.). Pursuant to the implied consent statute, section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.), the Motor Vehicle Division, Department of Revenue (department), entered a three month order of denial against Frank Lessar (defendant) for his refusal to submit to a chemical test. The order provided that the denial would re-main in effect until the defendant complied with certain conditions for licensing recited in the order. The district court held that the order of denial expired at the conclusion of the three month period and, even though the defendant thereafter had not obtained a driver's license and complied with the other conditions of the denial order, he nevertheless was not driving "under denial" on the date of the offense. The court also held that the prosecution's evidence failed to establish the defendant was ever served with notice of the implied consent hearing resulting in the order of denial. We reverse the judgment of the district court and remand with directions.

## I.

On April 6, 1979, the county court of Huerfano County found the defendant guilty of violating section 42–2–130(1)(a), C.R.S.1973 (1980 Supp.), which provides in pertinent part:

"Any person who drives a motor vehicle upon any highway of this state at a time when his driver's . . . license or driving privilege . . . is denied, suspended, or revoked is guilty of a misdemeanor. . . ."

The evidence at trial consisted of testimony from two prosecution witnesses and certified copies of records of the department, and established the following facts. On November 1, 1978, a Colorado state patrol officer stopped the defendant for speeding on Colorado highway 160 approximately six miles west of Walsenburg. The defendant was unable to produce a driver's license and originally gave the officer a false name but later admitted his true identity. After making a computer check with the department, the officer issued the defendant a summons and complaint for driving under denial.

The records of the department (exhibit A) revealed that a Colorado driver's license was issued to the defendant on August 1, 1974, and expired on September 6, 1977. Included in the department's records was a three month order of denial issued on October 7, 1977, with an effective date of September 21. This order was entered due to

the defendant's refusal to submit to a chemical test under the implied consent law, section 42–4–1202, C.R.S.1973 and 1980 Supp., and stated as follows:

"This matter coming on to be heard and considered after opportunity for hearing as provided by law and the hearing and reexamination officer now being fully advised,

"DOTH FIND: That your record herein sustains denial as provided in 42–4–1202 CRS 1973 as amended.

"IT IS THEREFORE ORDERED that your privilege to operate a motor vehicle upon the streets and highways of this state is hereby denied pursuant to 42–4–1202 CRS 1973.

"IT IS FURTHER ORDERED that the denial shall remain in effect until [sic] three months and shall continue in effect until the provisions of 42–4–1202 CRS 1973 are complied with, future proof of public liability insurance filed with, and a Thirteen Dollar ($13.00) restoration fee is paid to the Department of Revenue, Motor Vehicle Division.

"IT IS FURTHER ORDERED that you immediately surrender all driver's licenses now held by you and in your possession or control."

A copy of the order was sent by certified mail to the defendant's address at 507 Kansas Street, Walsenburg, Colorado, on October 20, 1977, and a return receipt was signed by the defendant two days later. An employee of the department testified that ordinarily a copy of the order is served upon the driver at the conclusion of the revocation hearing. However, when the driver fails to appear, a copy of the order is mailed to the driver's address as listed in the departmental records.

The defendant offered no evidence to controvert the prosecution's case. The county court found the defendant guilty as charged, denied his motion for a new trial, and then postponed sentencing pending an appeal to the district court pursuant to Crim.P. 37. The district court reversed the conviction. It reasoned that section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.), "makes

no provision that the order of denial shall remain in effect until such time as [d]efendant's license is reinstated" and therefore, under a strict construction, "the order of denial of [d]efendant's driving privilege for three months would have expired on December 21, 1977," long before the act of driving on November 1, 1978. The court also determined that the department's records failed to establish notice to the defendant of the departmental hearing resulting in the order of denial.

We conclude that the district court erred. The defendant's driving status continued "under denial" until such time as he obtained a driver's license in compliance with the conditions of the denial order. Also, the prosecution's evidence did establish a prima facie case of notice to the defendant of the implied consent hearing at which the order of denial was entered.

II.

We first address the issue whether the order of denial and the defendant's status thereunder terminated at the end of the three month period of denial in spite of his non-compliance with the express conditions for licensing set forth in the order.

■ We believe the statutory scheme contemplates that an order of denial entered pursuant to the implied consent law will subject a driver to prosecution for driving under denial, section 42–2–130(1)(a), C.R.S.1973 (1980 Supp.), when that person operates a motor vehicle after the expiration of the temporal term of the denial order but without having obtained a license in accordance with the conditions of the order. In this respect we see no real distinction, for purposes of a prosecution under section 42–2–130(1)(a), between a driver whose license has been revoked under the implied consent law and a person against whom an order of denial has been entered.

■ By the terms of section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.), if the department determines that the driver, without good cause, failed to comply with the implied consent law, his license shall be

revoked; but if the driver is "a resident without such license," the department "shall deny to such person the issuance of a license for a period of three months...." Since the defendant's license had already expired prior to the implied consent hearing, the defendant was "a resident without such license" and an order of denial was the appropriate sanction.

■ Under section 42–4–1202(3)(e), a revocation order voids a previously issued license to drive and, for a first revocation, makes the driver ineligible for licensing for a period of three months. Likewise, under the same statute, a first order of denial renders the driver legally ineligible for licensing for the same period of time. In both instances the right to licensing does not automatically spring to life at the end of the period of ineligibility, as if the order never had been entered. *See Denver v. Palmer*, 140 Colo. 27, 29, 342 P.2d 687, 688 (1950). Rather, the completion of the term of revocation or denial merely makes the driver eligible to apply for a new license. The issuance of a new license is expressly conditioned upon compliance with the terms of the denial order. Until the driver complies with those terms and obtains a new license, his driving status as "revoked" or "denied' continues. As we observed in *People v. Lopez*, 143 Colo. 523, 525, 354 P.2d 491, 492 (1960):

> "All licenses to operate motor vehicles in the State of Colorado terminate upon a certain date, requiring a new application and the granting of a new license to operate a motor vehicle. Until the privilege of operating a motor vehicle has been restored by a new application and license, a privilege previously revoked remains revoked."

*See also, e. g., Rickard v. District of Columbia*, 214 A.2d 476 (D.C.1965); *People v. Suddoth*, 52 Ill.App.2d 355, 202 N.E.2d 120 (1964); *State v. Brude*, 222 N.W.2d 296 (N.D.1974).[1]

■ The construction employed by the district court would vitiate the public safety purposes of the Uniform Traffic Code by permitting a person to drive upon the public streets and highways after an order of denial and nevertheless escape prosecution under section 42–2–130(1)(a) merely because the act of driving occurred after the three month period of ineligibility for licensing had expired. We reject such construction as unreasonable. *See, e. g., Van Gerpen v. Peterson*, Colo., 620 P.2d 714 (1980). Before a person against whom an order of denial has been entered is entitled to operate a motor vehicle, he must reapply for a new license at the end of the period of denial, pay the restoration fee required by section 42–2–124(3), C.R.S.1973 (1980 Supp.), file proof of financial responsibility as required by section 42–7–406(1), C.R.S.1973 (1980 Supp.), and must be in receipt and possession of the new license. Unless and until these conditions are satisfied, his driving status as "denied" continues and he is subject to prosecution under section 42–2–130(1)(a) for driving under denial. Since the defendant did not take these steps after the termination of the three month period of denial had expired, he was properly convicted by the county court of driving under denial.

### III.

We next consider the district court's determination that the departmental records (exhibit A) did not establish notice to the defendant of the implied consent hearing which resulted in the order of denial. Under the implied consent law when an officer

1. Here, the order of denial contained conditions for licensing identical to those required for licensing after an order of revocation entered pursuant to the implied consent statute. Section 42–2–124(3), C.R.S.1973 (1980 Supp.), requires payment of a restoration fee and section 42–7–406(1), C.R.S.1973 (1980 Supp.), requires proof of financial responsibility as conditions precedent to the issuance of a license. To exempt these statutory requirements from an order of denial, in effect, would reward the *unlicensed* driver merely because, instead of being licensed at the time of his refusal to undergo a chemical test, he had no license at all. Such a construction would fall far short of achieving a just and reasonable result. Section 2–4–201(1)(c), C.R.S.1973 (1980 Repl.Vol. 1B).

files a report with the department that a driver has refused a chemical test, the department must "serve notice upon said person, in the manner provided in section 42–2–117, to appear before the department and show cause why his license . . . should not be revoked." Section 42–4–1202(3)(e), C.R.S.1973 (1980 Supp.). Notice by registered mail,[2] return receipt requested, to the licensee's last known address as shown by the records in the motor vehicle division is authorized by section 42–2–117(2), C.R.S.1973.

■■■ The order of denial, which was admitted into evidence, expressly states that it was entered "after opportunity for hearing as provided by law." This order is an official state record and, by statute, "constitutes prima facie proof of the information contained therein." Section 42–2–118(2), C.R.S.1973 (1980 Supp.); see Gillespie v. Department of Revenue, 41 Colo.App. 561, 592 P.2d 418 (1978). Moreover, administrative action taken pursuant to an agency's statutory authority "is entitled to a presumption of validity and constitutionality." Moore v. District Court, 184 Colo. 63, 67, 518 P.2d 948, 951 (1974); see also TNT Tariff Agents, Inc. v. I.C.C., 525 F.2d 1089 (2d Cir. 1975); Maryland-National Capital Park and Planning Commission v. Lynn, 168 U.S.App.D.C. 407, 514 F.2d 829 (1975); United States v. Rucker, 435 F.2d 950 (8th Cir. 1971); Crowther v. Seaborg, 312 F.Supp. 1205 (D.Colo.1970); Minnesota v. Chicago and N.W. Ry. Co., 309 F.Supp. 56 (D.Minn.1970). The district court's determination that the prosecution's evidence failed to establish notice to the defendant of the implied consent hearing was, therefore, erroneous.[3]

The judgment is reversed and the cause is returned to the district court with di-

rections to remand the case to the county court for a sentencing hearing.

---

**2.** Registered mail includes certified mail. Section 2–4–401(12), C.R.S.1973 (1980 Repl.Vol. 1B); see Tobias v. Colorado, 41 Colo.App. 444, 586 P.2d 669 (1978).

**3.** Although one's interest in maintaining a driver's license is an interest that requires a due process hearing before termination, Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the defendant in this case did not raise the adequacy of notice at trial or in his motion for a new trial. A constitutionally adequate

method of notice is one that is reasonably calculated to reach the intended party. Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). We need not and do not decide here the constitutional adequacy of the statutory notice authorized by section 42–2–117(2), C.R.S.1973. See Ewing v. Motor Vehicle Division, Colo.App., 624 P.2d 353 (1980); Tobias v. Colorado, 41 Colo.App. 444, 586 P.2d 669 (1978).