The PEOPLE of the State of Colorado,
Plaintiff-Appellee,

v.

Bill Robert LESH, Defendant-Appellant.

No. 82SA316.

Supreme Court of Colorado,
En Banc.

Aug. 29, 1983.
Rehearing Denied Sept. 26, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Joel W. Cantrick, Sol. Gen., Jeffrey Weinman, Nathan B. Coats, Asst. Attys. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Deborah S. Waldbaum, Thomas M. Van Cleave, III, Deputy State Public Defenders, Denver, for defendant-appellant.

NEIGHBORS, Justice.

The defendant appeals the judgment of conviction entered by the district court upon the jury's verdict finding him guilty of driving after judgment prohibited, section 42–2–206, C.R.S.1973. The defendant urges two grounds for reversal: (1) the elemental instruction failed to include the requirement that the defendant had knowledge his driver's license was revoked, and (2) the defendant's plea of guilty to a charge of driving while ability impaired, a predicate for the order of revocation, was accepted by the trial court in violation of Crim.P. 11.

We reverse the defendant's conviction based on issue (1) and affirm the trial court's ruling on issue (2).

### I.

The defendant was stopped for a traffic violation in Ft. Collins, Colorado on July 1, 1979. The officer requested that the defendant produce his vehicle registration and driver's license. The officer checked the status of the driver's license and learned that it had been revoked. The officer reported this information to the defendant who expressed surprise. The defendant was then arrested.

At trial, an employee of the Department of Revenue (Department) testified that the defendant's file maintained by the Department contained an order of suspension based on a finding that the defendant was an habitual traffic offender. The order was dated January 4, 1979, and became effective on January 24, 1979. The Department's file also contained a postal return receipt signed by the defendant acknowledging he had received the "order of revocation/habitual offender." The Department's file also included three notices of hearings mailed to the defendant informing him that the Department intended to revoke his driving privileges. The employee of the Department also testified as to the basis for the Department's determination that the defendant was an habitual traffic offender.

The defendant testified that he had no recollection of receiving the order revoking his driver's license. He also stated that he was "quite surprised" to learn that his license had been revoked.

The jury returned its verdict finding the defendant guilty of the charge. The defendant was sentenced to the Department of Corrections for one year plus one year of parole.

### II.

The defendant's first argument is that the trial court erred in refusing to give his tendered instructions on the elements of the crime and his theory of the case. The thread common to both instructions is that the prosecution must prove that the defendant had knowledge of the revocation order as an element of the crime. We agree with the defendant's position.

The statutory scheme governing habitual traffic offenders is found in sections 42–2–201 to –208, C.R.S.1973. An habitual traffic offender is a driver who has accumulated the designated number of convictions for specific traffic offenses within the prescribed time periods. Section 42–2–202, C.R.S.1973 (1982 Supp.). A driver who operates a motor vehicle while his license is under revocation by reason of his status as an habitual traffic offender is guilty of driving after judgment prohibited, a class 5 felony. Section 42–2–206(1), C.R.S.1973. The trial court may not grant probation or suspend any part of the sentence unless the defendant establishes to the satisfaction of the trial judge at the sentencing hearing that he or she had to drive because of an emergency. *People v. McKnight,* 200 Colo. 486, 617 P.2d 1178 (1980).

The Department is granted the authority to revoke the license of an habitual traffic offender in section 42–2–203, C.R.S.1973. That section requires that the Department

comply with the hearing procedures enumerated in sections 42–2–123(7) to –123(12), C.R.S.1973, before issuing a revocation order. Section 42–2–123(12), C.R.S.1973 (1982 Supp.), provides that if a defendant fails to appear for the revocation hearing after receiving proper notice, the order of revocation shall be entered immediately by the Department. This statute also contains the following provision which is at issue in this case:

> "[S]uch suspension or revocation shall not be effective until twenty days after notification of such action has been mailed to such licensee by registered or certified mail, return receipt requested, at his last known address as shown by the records of the department. *Proof of such mailing is sufficient notice under this section.*" (Emphasis added.)

The People claim that the emphasized language establishes the requirement that proof of mailing is expressly made sufficient notice under the statute and, therefore, the issue of whether the defendant had knowledge, either actual or constructive, is not relevant. The defendant counters this argument by citing section 42–2–117(2), C.R.S.1973, the general statute governing the requirements for notices issued by the Department to drivers. That enactment establishes that proof of notice given in any one of four prescribed ways constitutes "prima facie proof of said denial, cancellation, suspension, or *revocation.*" (Emphasis added.) The statute states in pertinent part:

> "Evidence of a registered return receipt of a notice mailed to the last known address of the licensee, or evidence of a copy of the notice mailed to the last known address of the licensee, or evidence of delivery of notice in person to the last known address of the licensee, or evidence of personal service upon the licensee of the order of denial, cancellation, suspension, or revocation of the license by the executive director of the department, or by his duly authorized representative,

is prima facie proof of said denial, cancellation, suspension, or revocation."

The statute establishes that a prima facie case on the element of notice is established by evidence that: (1) the Department received a registered return receipt for a notice that was mailed; (2) a copy of the notice was mailed; (3) the notice was personally delivered to the last home address of the driver; or (4) the notice was personally served upon the driver.

 In construing these two statutes, we are required to give effect to both enactments. *Hyrup v. Kleppe*, 406 F.Supp. 214 (D.Colo.1976); *Buck v. District Court*, 199 Colo. 344, 608 P.2d 350 (1980); *People v. Cornelison*, 192 Colo. 337, 559 P.2d 1102 (1977); *Lininger v. City of Sheridan*, 648 P.2d 1097 (Colo.App.1982). We hold that under section 42–2–123(12), C.R.S.1973 (1982 Supp.), the legislature has adopted proof of mailing by registered or certified mail, return receipt requested, as the appropriate method to be used by the Department for giving notice of the order of revocation. However, section 42–2–117(2), C.R. S.1973, establishes that such notice is only prima facie proof and does not create a conclusive presumption. Accordingly, the People are required to prove the element of knowledge of the revocation order in a driving after judgment prohibited case.

 The People claim that the defendant was not prejudiced when the trial court refused his tendered instructions because he was permitted to testify to his lack of knowledge during the trial. This argument is not persuasive. Juries are presumed to follow the court's instructions. *People v. Smith*, 620 P.2d 232 (Colo.1980); *People v. Gonzales*, 198 Colo. 450, 601 P.2d 1366 (1979); *People v. Sexton*, 192 Colo. 81, 555 P.2d 1151 (1976). Even if the jury believed the defendant's testimony that he had no knowledge of his status as an habitual traffic offender because his license had been revoked, the jury was logically required to return a verdict of guilty. Under the instructions given by the court, the defendant

was guilty of the charge if three elements were established: (1) the defendant was an habitual offender; (2) he was driving a motor vehicle; and (3) the revocation order was in effect.

Our decision is consistent with the result reached by other appellate courts that have faced a similar issue. In *State v. Atwood,* 290 N.C. 266, 271, 225 S.E.2d 543, 545–46 (1976), the North Carolina Supreme Court stated:

> "[W]e believe that the legislature also intended that there be actual or constructive knowledge of the suspension or revocation in order for there to be a conviction under this statute. We reach this conclusion for the reason that G.S. 20–16(d) requires the Department to provide notice and an opportunity for a hearing in order for there to be a lawful suspension. For the purposes of a *conviction* for driving while license is suspended or revoked, mailing of .the notice under G.S. 20–48 raises only a prima facie presumption that defendant received the notice and thereby acquired knowledge of the suspension or revocation. Thus, defendant is not by this statute denied the right to rebut this presumption." (Emphasis in original.) (Citations omitted.)

See also *State v. Chester,* 30 N.C.App. 224, 226 S.E.2d 524 (1976); *Jeffcoat v. State,* 639 P.2d 308 (Alaska App.1982); *State v. Orr,* 246 Ga. 644, 272 S.E.2d 346 (1980); *State v. Kemp,* 106 Wis.2d 697, 318 N.W.2d 13 (1982); *State v. Collova,* 79 Wis.2d 473, 255 N.W.2d 581 (1977).

Because we have determined, as a matter of statutory construction, that knowledge of the order of revocation is an essential element in a driving after judgment prohibited prosecution, we need not address the defendant's constitutional argument that the absence of a *mens rea* element in the statute creates a strict liability crime which violates due process.

### III.

The defendant's second argument for reversal is the claimed invalidity of his conviction based on a plea of guilty entered on May 23, 1978, to a charge of driving while ability impaired, which was one of the convictions upon which his habitual traffic offender status was based. The record establishes that the guilty plea was entered on behalf of the defendant by his attorney.

A defendant may attack on constitutional grounds the validity of any conviction for a traffic offense upon which his or her status as an habitual traffic offender is predicated. *People v. Roybal,* 618 P.2d 1121 (Colo.1980) (*Roybal I*); *People v. Heinz,* 197 Colo. 102, 589 P.2d 931 (1979). The defendant made a prima facie showing that the plea was constitutionally infirm when he offered the tape recording of the providency hearing which established that: (1) he was not present in court when the plea was accepted, and (2) his attorney advised the court only that he told the defendant he had a right to proceed to trial. *Crocker v. Colorado Department of Revenue,* 652 P.2d 1067 (Colo.1982). *See also People v. Roybal,* 617 P.2d 800 (Colo.1980) (*Roybal II*). The burden then shifted to the prosecution to establish that the plea was entered and the conviction obtained in accordance with constitutional requirements. *People v. Meyers,* 617 P.2d 808 (Colo.1980); *People v. Roybal, supra (Roybal II).*

We first note that Crim.P. 11(c) and sections 16–7–202 and 16–7–206(1), C.R.S.1973 (1978 Repl.Vol. 8), authorize an attorney to enter a plea of guilty on behalf of the client in traffic and misdemeanor cases, except for class 1 misdemeanors or where the possible sentence exceeds one year. At the Crim.P. 35(c) hearing, the defendant's attorney testified that he fully advised his client of his rights enumerated in Crim.P. 11(b). The defendant does not specifically attack the sufficiency of the advisement given by the attorney. However, the defendant claims that the county judge who accepted the plea of guilty had a duty to personally ascertain whether the defendant voluntarily and knowingly entered the plea. We reject this rigid approach.

■ A defendant who pleads guilty or nolo contendere to any criminal offense waives the following fundamental constitutional rights: (1) the privilege against self-incrimination; (2) the right to trial by jury; (3) the right to confront one's accusers; (4) the right to insist that the prosecution's proof at trial establish guilt beyond a reasonable doubt; (5) the right to present witnesses through the use of compulsory process; (6) the right to testify in defense of the charge; and (7) the right to a speedy and public trial. *People v. Meyers, supra.* Before a conviction based upon a plea of guilty or nolo contendere satisfies constitutional requirements, the record must establish that the plea was entered voluntarily and understandingly. *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). Crim.P. 11 prescribes the procedure which will ensure that those requirements are met before such a plea is accepted by the trial court. *People v. Roybal, supra (Roybal II).*

■ Before today, we have not addressed the issue of the apparent tension between the constitutional requirements of *Boykin* and the statutes enacted by the legislature and Crim.P. 11(c) which authorize the entry of guilty pleas by counsel on behalf of defendants in non-felony cases. In *Mills v. Municipal Court,* 10 Cal.3d 288, 515 P.2d 273, 110 Cal.Rptr. 329 (1973), the California Supreme Court considered this precise question. The court held that a guilty plea entered by counsel on behalf of the defendant in a misdemeanor case is valid if it is accompanied by an explicit and adequately documented showing that the defendant was aware of his or her constitutional rights and knowingly and intelligently waived them. We adopt this principle of law. We fully recognize the practical realities faced by county and municipal courts in which thousands of less serious offenses are filed each year. The convenience of the parties and the courts should be given deference, but only so long as the constitutional rights of the defendant are fully respected. *Mills v. Municipal Court, supra.* We agree with the analysis of the California court.

"When viewed as a whole, *Boykin* and *Tahl* do not preclude the state from establishing a procedure, applicable to cases involving less serious offenses, which permits a defendant, at his own option, to appear and plead guilty through counsel, so long as such procedure affords adequate protection to the constitutional interests at stake."

10 Cal.3d at 304–305, 110 Cal.Rptr. 329, 515 P.2d 273.

■ We hold that *before* accepting a plea of guilty or nolo contendere to a misdemeanor or traffic offense, the trial court must be satisfied that the defendant's decision to acknowledge guilt has been made knowingly and understandingly. *Mills v. Municipal Court, supra; State v. Nordstrom,* 331 N.W.2d 901 (Minn.1983); *City of Cleveland v. Whipkey,* 29 Ohio App.2d 79, 278 N.E.2d 374 (1972); *Crew v. Nelson,* 88 S.D. 162, 216 N.W.2d 565 (1974). *See also State v. Jones,* 404 So.2d 1192, 1196 (La. 1981) (Dennis, J., Dixon, C.J., and Calogero, J., concurring); *State v. Tweedy,* 209 Neb. 649, 309 N.W.2d 94 (1981). This practice is necessary because a waiver of fundamental constitutional rights cannot be presumed from a silent record. *Boykin v. Alabama, supra.* In addition, where the underlying convictions form the basis for a substantive offense or sentence enhancement, such convictions based on pleas of guilty must be obtained in compliance with constitutional standards. *People v. Shaver,* 630 P.2d 600 (Colo.1981).

■ A trial court may assure itself that the plea of guilty or nolo contendere is being entered by the defendant in accordance with constitutional requirements by (1) complying with Crim.P. 11(b), (2) insisting that a written plea agreement signed by the defendant and his attorney is filed with the court, or (3) interrogating counsel about the nature of the advisement given to the client

by the attorney and the client's responses. The court must be concerned with reality and not ritual. A formalistic recitation by the trial judge at the providency hearing is not a constitutional requirement. *People v. Canino*, 181 Colo. 207, 508 P.2d 1273 (1973).

■ In this case, the county court's findings that the "waiver is knowing and intelligent" and "the plea is voluntary" are not supported by the record. The county court had totally inadequate facts from which to determine that the guilty plea was knowingly and understandingly made before it accepted the plea offered by the defendant's lawyer. The absence of any evidence in the record to support the trial court's findings presents the issue of whether this defect in the providency hearing can be cured at a Crim.P. 35(c) hearing. We have not addressed this question precisely. However, our decisions have implied a recognition of the People's right to cure such a deficiency by offering evidence at a Crim.P. 35(c) hearing which establishes that the defendant's plea was constitutionally obtained. The defendant's evidence was sufficient to make out a prima facie case that the plea was not knowingly and understandingly made. The burden then devolved upon the People to establish by a preponderance of the evidence the constitutional validity of the guilty plea. *Watkins v. People*, 655 P.2d 834 (Colo.1982) ("Once a prima facie showing is made, the conviction is not admissible unless the prosecution establishes by a preponderance of the evidence that the conviction was obtained in accordance with the defendant's constitutional rights." 655 P.2d at 837); *People v. Meyers, supra* ("In the face of a silent record [of a providency hearing], it was incumbent upon the prosecution to demonstrate by considerably greater evidence than present here that the defendant's plea was knowingly made." 617 P.2d at 815); *People v. Keenan*, 185 Colo. 317, 524 P.2d 604 (1974) ("[T]he defendant's attorney for the prior hearing and sentencing may testify in the 35(b) hearing that the defendant knew and understood all the elements of the crime charged." 185 Colo. at 319–20, 524 P.2d 604). *See also People v. Shaver, supra; People v. Alvarez*, 181 Colo. 213, 508 P.2d 1267 (1973); *People v. Brewer*, 648 P.2d 167 (Colo.App.1982).

■ The People met their burden in this case. The attorney who entered the plea on behalf of the defendant testified as a prosecution witness that he gave a full and complete advisement to the defendant at the time the accused decided to accept the plea agreement. The defendant testified, not that such an advisement was not provided, but that he could not remember the advisement. Based on this evidence, the trial court properly resolved the guilty plea issue against the defendant. *See People v. DeLeon*, 625 P.2d 1010 (Colo.1981). Since the record contains sufficient probative evidence to support the findings of the trial court, its ruling is binding on appeal. *Marez v. Dairyland Insurance Co.*, 638 P.2d 286 (Colo.1981); *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979); *Martinez v. Martinez*, 638 P.2d 834 (Colo.App.1981).

The judgment is reversed. This case is remanded to the trial court for a new trial.