**Mark Allen AULT, Plaintiff-Appellant,**

**v.**

**DEPARTMENT OF REVENUE, State of Colorado, Defendant-Appellee.**

**No. 84SA173.**

Supreme Court of Colorado, En Banc.

March 18, 1985.

Stephen E. Howard, Fischer & Wilmarth, Fort Collins, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., James R. Willis, Asst. Atty. Gen., Denver, for defendant-appellee.

DUBOFSKY, Justice.

The plaintiff, Mark Allen Ault, appeals from an order of the Larimer County District Court affirming a nine month revocation of his driver's license under the "implied consent law." § 42–4–1202(3), 17 C.R.S. (1984).[1] The plaintiff contends that the revocation is ineffective because he did not receive actual notice of the revocation

---

1. Under the version of the "implied consent law" in effect at the time of the plaintiff's arrest and hearing, all persons driving in Colorado were deemed to have given consent to a chemical blood or breath test for alcohol if arrested for any misdemeanor "arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of, or impaired by, alcohol." § 42–4– 1202(3)(a), 17 C.R.S. (1982 Supp.). The "implied consent law" was repealed and reenacted on May 23, 1983, in substantially different form. Ch. 476, sec. 2, § 42–4–1202(3), 1983 Colo.Sess. Laws 1631, 1632–33. The basic provision implying consent in the context of alcohol-related misdemeanor driving arrests remains intact. § 42–4–1202(3), 17 C.R.S. (1984).

hearing. We affirm the order of the district court.

On October 30, 1982, Officer Jerry Hurt of the Larimer County Sheriff's Department arrested the plaintiff for driving under the influence of, or while impaired by, alcohol. § 42-4-1202(1). After the arrest, Officer Hurt executed an affidavit setting forth the grounds for his suspicion that the plaintiff was under the influence of or impaired by alcohol at the time of his arrest, and stating that the plaintiff had refused to submit to a chemical test of his blood or breath after being given a written advisement of his rights under the "implied consent law" and the consequences of refusing to submit to the required chemical tests.[2] On the basis of the affidavit, the Department of Revenue (Department) scheduled a license revocation hearing for January 11, 1983.[3]

The Department sent the plaintiff a notice of the hearing by certified mail, return receipt requested. The notice was postmarked December 21, 1982. On January 7, 1983, the notice was returned to the Department marked "unclaimed." The claim check attached to the returned envelope indicated that postal authorities had notified the plaintiff on December 23 and again on December 29 that the letter was available to be picked up at the post office. The return receipt stub was not on the envelope when it was returned to the Department.

The plaintiff failed to appear for the revocation hearing. In his absence, Officer Hurt testified that he observed the plaintiff driving erratically, that when he stopped

the plaintiff, he smelled an alcoholic beverage on the plaintiff's breath, and that the plaintiff failed a number of physical coordination tests. The officer then arrested the plaintiff and took him to the Fort Collins Police Department. At the police station, the plaintiff was provided with a standard written "implied consent" advisement, and, according to Officer Hurt, the plaintiff refused to submit to any chemical tests for alcohol. The hearing officer revoked the plaintiff's driver's license for nine months under section 42-4-1202. The plaintiff received the order of revocation about a week later.

On February 15, 1983, the plaintiff sought C.R.C.P. 106 review of the license revocation in Larimer County District Court. The complaint alleged that the plaintiff did not refuse to submit to a blood test, that the failure of the Department to provide the plaintiff with actual notice of his revocation hearing deprived the plaintiff of due process of law, and that the license revocation was an abuse of discretion. At the C.R.C.P. 106 review hearing, the plaintiff also argued that section 42-2-117(2), 17 C.R.S. (1984), requires that the state prove actual notice by producing a signed and completed registered return receipt whenever certified or registered mail is used as the means of notification.

During the hearing, the district court refused to hear testimony, but the plaintiff and his wife provided the court with affidavits. The plaintiff averred that he would have consented to a blood test "had such a test been offered." The plaintiff further

---

**2.** The written advisement listed the grounds for the officer's belief that the plaintiff was under the influence of or impaired by alcohol and advised the plaintiff that: 1) all drivers in Colorado are deemed to have consented to blood or breath tests for alcohol whenever an officer has reasonable grounds to suspect that they were driving under the influence of, or impaired by, alcohol; 2) misdemeanor charges would be filed against him; 3) the results of the chemical tests could be used in evidence to support such charges; 4) if he refused to submit to such tests he would receive notice to appear and show cause why his driver's license should not be revoked; 5) the refusal to submit to tests could not be used in the misdemeanor prosecution;

and 6) he or his attorney could obtain the results of the tests.

**3.** When an affidavit was filed under the "implied consent law" then in effect, the Department was required to hold a hearing at which the driver could show cause why his license should not be revoked. § 42-4-1202(3)(e), 17 C.R.S. (1982 Supp.). Under the present version of the "implied consent law," *see* fn. 1 *supra,* the Department, upon receiving the officer's report, may revoke the license prior to hearing, subject to the driver's written request for hearing within seven days of receiving the revocation notice. § 42-2-122.1(3)-(5), 17 C.R.S. (1984).

stated that he worked at a Fort Collins auto dealership six days a week, fourteen hours a day, and never received the first notice of certified mail waiting for him at the post office. The plaintiff admitted, however, that his wife received the second notice of certified mail, but that the mail was returned to sender before he had an opportunity to pick it up. The affidavit of the plaintiff's wife confirmed that she received the second notice. The plaintiff's wife further asserted that she worked from 8:00 a.m. until 7:00 p.m. Monday through Friday.

The district court held that notice by certified mail did not deprive the plaintiff of due process of law and that the hearing officer did not abuse his discretion in proceeding with the revocation hearing in the plaintiff's absence or in revoking the plaintiff's license.[4] On appeal, the plaintiff urges that the revocation of his license was invalid because he did not receive actual notice of his license revocation hearing. Actual notice, the plaintiff maintains, is required both by statute and by due process of law.[5] We examine the relevant statutory and due process notice requirements in turn.

## I.

Under the version of section 42–4–1202(3)(e) in effect at the time of the plaintiff's arrest and hearing,[6] notice of pending revocation hearings was to be served "in the manner provided in section 42–2–117...." Section 42–2–117(2), 17 C.R.S. (1984), provides:

All notices required to be given to any licensee or registered owner under the provisions of the motor vehicle laws shall be in writing; and, if mailed postpaid by registered mail, return receipt requested, to him at the last known address shown by the records in the motor vehicle division, such mailing shall be sufficient notice in accord with the motor vehicle laws. Evidence of a registered return receipt of a notice mailed to the last known address of the licensee, or evidence of a copy of the notice mailed to the last known address of the licensee, or evidence of delivery of notice in person to the last known address of the licensee, or evidence of personal service upon the licensee of the order of denial, cancellation, suspension, or revocation of the license by the executive director of the department, or by his duly authorized representative, is prima facie proof of said denial, cancellation, suspension, or revocation.[7]

The plaintiff argues that section 42–2–117(2) requires actual notice of pending revocation hearings. Under the language of the statute, the plaintiff contends, only a completed return receipt qualifies as "prima facie proof" of notice whenever the Department chooses registered or certified mail as the means of notification. According to the plaintiff, the statutory reference to a completed return receipt evinces a legislative intent to require actual receipt,

---

**4.** The district court did not respond to the plaintiff's statutory argument in its initial written findings and conclusions. The plaintiff subsequently reiterated the statutory argument in a "Motion for New Trial or to Alter and Amend the Judgment," which the district court denied without comment.

**5.** The appeal is before us because the plaintiff argues that if his statutory interpretation is not persuasive, section 42–2–117(2), 17 C.R.S. (1984) violates constitutional due process protections. *See* §§ 13–4–102, –110, 6 C.R.S. (1973).

**6.** The current version of the "implied consent" statute provides that persons refusing to submit to the required chemical tests are "subject to license revocation pursuant to the provisions of section 42–2–122.1." § 42–4–1202(3)(d), 17 C.R.S. (1984). Under section 42–2–122.1(3)(b), 17 C.R.S. (1984), notice of revocation must be mailed to the last known address shown on department records and to the address shown on the officer's report, and notice is deemed received three days after mailing unless returned by postal authorities. If the person is in custody, the notice must be personally served by the arresting officer. § 42–2–122.1(4)(a). We express no opinion on the construction or validity of the revised notice requirements.

**7.** "Registered mail" as defined in section 2–4–401(12), 1B C.R.S. (1980) includes certified mail. *People v. Lessar,* 629 P.2d 577, 581 n. 2 (Colo.1981).

not simply mailing, of the notice. Further, the plaintiff suggests that in *People v. Lesh*, 668 P.2d 1362 (Colo.1983), we already have held that the statute requires proof of actual notice in order for a license revocation to be effective. The plaintiff's arguments are not persuasive.

In *Lesh*, we held that the People must prove that the defendant had knowledge of the underlying license revocation in order to obtain a conviction for driving after judgment prohibited. 668 P.2d at 1365–66. We noted that section 42–2–117(2) provides that certain evidence of mailing or service of notice constitutes "prima facie proof of said denial, cancellation, suspension, or revocation." In a criminal context, we reasoned that because such evidence of mailing or service is prima facie proof only and does not raise a conclusive presumption of notice, the General Assembly intended to require the prosecution to prove actual notice rather than simply the mailing or service of notice.

■ By its terms, the statutory language interpreted in *Lesh* applies only to notice of "denial, cancellation, suspension, or revocation," *i.e.*, notices of final action whereby one is deprived of driving privileges. In contrast, the notice at issue here was a notice of hearing, and therefore does not fall into the category of notice for which the enumerated evidence of mailing or service was but prima facie proof. For notices such as the one at issue here, which is not a notice of final action, section 42–2–117(2) provides that when notice is mailed

by registered or certified mail, "such *mailing* shall be sufficient notice...." (emphasis added). Therefore, contrary to the plaintiff's contention, section 42–2–117(2) does not require that a completed return receipt or any other evidence of actual notice be produced in this case; rather, the evidence of "mailing" proves "sufficient notice" of his impending hearing.[8]

## II.

The plaintiff argues that if section 42–2–117(2) is not construed to require proof of actual notice the section violates the constitutional due process requirements governing notice.[9] We do not agree.

■ Due process protections [10] apply to driver's license revocation proceedings, *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L.Ed.2d 90 (1971); *People v. Lessar*, 629 P.2d 577, 581 n. 3 (Colo.1981), and notice is an essential element of due process. *Blank v. District Court*, 190 Colo. 114, 116, 543 P.2d 1255, 1257 (1976). Notice comports with the requirements of due process when it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pending action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *accord MacMillan v. MacMillan*, 174 Colo. 20, 24, 482 P.2d 107, 109 (1971). Whether notice is "reasonably calculated" to reach interested parties "must be judged in the light of its practical application to the affairs of men

---

**8.** The legislative distinction between notices of final action and other types of notice is reasonable. The denial of driving privileges may become the basis for a conviction of driving after judgment prohibited. Requiring knowledge of the "denial, cancellation, suspension, or revocation" underlying a charge of driving after judgment prohibited supplies a culpable mental state element for the charge, avoiding potential due process problems arising from a strict liability crime. *People v. Lesh*, 668 P.2d 1362, 1366 (Colo.1983).

**9.** The plaintiff attempts to ground his constitutional argument on *Aetna Finance Co. v. Summers*, 642 P.2d 926 (Colo.1982), in which this court determined that certified mail did not

satisfy the notice requirements of the Colorado Consumer Credit Code. § 5–5–111(1), 2 C.R.S. (1984 Supp.). In so holding, we relied upon the strong legislative intent in the consumer credit code to provide notice and the opportunity to cure default, and found that the potential of nondelivery inherent in the use of certified mail would defeat the purpose of the code. *Id.* at 928. We did not consider in *Aetna* whether certified mail would satisfy the minimal due process requirements for notice.

**10.** The plaintiff refers only to due process protections without specifying any further the constitutional provisions that provide the basis for his claim.

as they are ordinarily conducted." *Greene v. Lindsey,* 456 U.S. 444, 451, 102 S.Ct. 1874, 1879, 72 L.Ed.2d 249 (1982) (quoting *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 69 L.Ed. 953 (1925)).

The United States Supreme Court has determined that in appropriate circumstances "notice by mail may reasonably be relied upon to provide interested persons with actual notice of judicial proceedings." *Greene,* 456 U.S. at 455, 102 S.Ct. at 1881. The plaintiff asserts a constitutionally significant distinction between ordinary and certified mail because the recipient of certified mail, return receipt requested, must either be at home when delivery is attempted, or else travel to the post office to receive certified mail. We decline to make a distinction under the facts of this case because the asserted burden is not too weighty, and receipt of the notice remains within the control of the recipient. Where it is impossible for a recipient to reach the post office, he may make arrangements for third parties to pick up undelivered mail.

■ The plaintiff's control over and responsibility for receipt of notice is particularly evident in this case. The plaintiff knew from reading the "implied consent" advisement form on the night of his arrest that his license could be revoked as a result of his refusal to submit to chemical tests. *See* fn. 2 *supra.* Nevertheless, the plaintiff disregarded at least one, possibly two, notifications of undelivered certified mail, and failed to pick up his mail or make arrangements to have someone pick it up for him. In *Klingbeil v. State Department of Revenue,* 668 P.2d 930 (Colo.1983), this court held that an out-of-state driver could not complain of insufficient notice of a pending proceeding to suspend driving privileges where the notice was not received because of the driver's failure to provide the Department with his current address:

[W]hen Klingbeil received two tickets, he knew or should have known that his driving privileges in Colorado were in jeopardy. He had a duty to monitor these citations and the consequences which might flow from them. His obligations included giving the officer an address where notice would reach him or leaving a forwarding address....

*Id.* at 933. The plaintiff here had a similar duty to remain alert to the consequences set forth in the "implied consent" advisement form and to pick up mail that might contain official notices pertaining to the consequences. Where nondelivery is thus due to the plaintiff's neglect of his duties, due process does not require the state to prove more than the mailing of notice. *State v. Verdirome,* 36 Conn.Sup. 586, 421 A.2d 563 (1980); *Townsend v. Dollison,* 66 Ohio St.2d 225, 421 N.E.2d 146 (1981); *Hodges v. State,* 649 P.2d 775 (Okl.Cr.App. 1982); *State v. Thomas,* 25 Wash.App. 770, 610 P.2d 937 (1980).[11] Any other rule would permit drivers to avoid revocation proceedings by deliberately evading mail that might contain notice of such proceedings. *Ryan v. Andrews,* 50 Ohio App.2d 72, 361 N.E.2d 1086, 1089 (1976).

In sum, the *Mullane* standard "does not require that the adopted method of service be absolutely certain to provide notice in every instance." *Patterson v. Cronin,* 650 P.2d 531, 535 (Colo.1982). The certified mail service permitted by section 42–2–117(2) is, like ordinary mail, a means of communication "upon which prudent men will ordinarily rely in the conduct of important affairs...." *Greene,* 456 U.S. at 455, 102 S.Ct. at 1880. We conclude that notice by certified mail under section 42–2–117(2) satisfies the due process requirements in *Mullane.*

Judgment affirmed.

---

**11.** We leave open the possibility that due process may not be satisfied where nondelivery is due to circumstances entirely beyond the recipient's control. *Ryan v. Andrews,* 50 Ohio App.2d 72, 361 N.E.2d 1086, 1089 n. 9 (1976).