STATE OF CONNECTICUT *v.* ANTAL TORMA
(8005)

DUPONT, C. J., FOTI and LAVERY, Js.

Argued January 9—decision released May 15, 1990

*Michael K. Courtney,* assistant public defender, with whom, on the brief, was *Valerie J. Quinn,* deputy assistant public defender, for the appellant (defendant).

*Jacqueline J. Footman,* deputy assistant state's attorney, with whom, on the brief, was *Walter Flanagan,* state's attorney, and *James Diamond,* deputy assistant state's attorney, for the appellee (state).

FOTI, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of operating a motor vehicle while his license was under suspension, in violation of General Statutes § 14-215. The defendant claims that the trial court erred (1) in denying his motions for judgment of acquittal, (2) in failing to charge as requested, and (3) in enhancing the sentence imposed pursuant to General Statutes § 14-215 (c). We find error in the court's sentencing.

The jury could reasonably have found the following facts. On May 20, 1988, at approximately 11:30 p.m., the defendant was operating a new black pickup truck northbound on Main Street in Danbury when he collided with another vehicle. The defendant, who con-

cedes that he was operating a motor vehicle at that time and that he was on a public highway, produced a license, a registration and an insurance card for the investigating officer. The address listed on those documents was 20 Grandview Avenue, Danbury. A motor vehicle department check disclosed that the defendant's driver's license had been suspended. He was issued a summons for operating a motor vehicle while his license was under suspension and for improper passing.[1]

The defendant first claims that the trial court erred in not granting his three motions for judgment of acquittal, each claiming that the state had produced insufficient evidence. The defendant moved for a judgment of acquittal at the close of the state's case, at the close of his own case, and finally when the jury returned its verdict of guilty.

It is the defendant's claim (1) that notice of suspension is required pursuant to General Statutes § 14-111 (a),[2] (2) that the state did not and could not

---

[1] The defendant was found not guilty of improper passing, General Statutes § 14-232 (1).

[2] General Statutes § 14-111 (a) provides: "No provision of this chapter shall be construed to prohibit the commissioner from suspending or revoking any registration or any operator's license issued under the provisions of any statute relating to motor vehicles, or from suspending the right of any person to operate a motor vehicle in this state, or from suspending or revoking the right of any nonresident to operate, or the right to any operation of, any motor vehicle within this state, for any cause that he deems sufficient, with or without a hearing. Whenever any certificate of registration or any operator's license or both are suspended or revoked, all evidence of the same shall be delivered forthwith to the commissioner or to any person authorized by him to receive the same, and the commissioner or any person authorized by him may seize such certificate of registration or operator's license and all evidence of the same. Except as otherwise provided by law, the commissioner may cancel any such suspension or revocation and may return such certificate of registration or the operator's license either with or without an additional fee, provided no certificate of registration or operator's license which has been suspended for any definite term, except as provided in subsection (k) of this section, shall be returned until

prove that "notice [was] forwarded by bulk certified mail," (3) that the state must prove at least constructive delivery by certified mail, and (4) that no admissible evidence was offered on this issue.

The following facts are relevant to the disposition of this issue. The defendant knew that a notice of suspension was due to arrive in the mail because of an earlier conviction for operating a motor vehicle while under the influence of intoxicating liquor. Torma, an immigrant who had lived in the United States for three years, testified that he did not know that he was obligated by law to notify the motor vehicle department of his change of address.[3]

The state introduced a copy of the suspension notice that had been forwarded to the defendant, and an alleged receipt for "certified bulk mail" into evidence through Sergeant John MacSweeney, an employee of the motor vehicle department. MacSweeney, who had been employed at the motor vehicle department for over eighteen years, was familiar with the system of suspending an operator's license. He explained that, upon being notified that someone's license has been suspended, his department sends a letter to that person's last known address, two weeks prior to the date of suspension, so as to allow that individual an opportunity to request a hearing to stay the suspension. These notices are mailed in bulk, and the motor vehicle depart-

the term of suspension has been completed. Any appeal taken from the action of the commissioner shall not act as a stay of suspension or revocation except with his consent. No service of process shall be necessary in connection with any of the prescribed activities of the commissioner, but a notice forwarded by bulk certified mail to the address of the person registered as owner or operator of any motor vehicle as shown by the records of the commissioner shall be sufficient notice to such person that the certificate of registration or operator's license is revoked or under suspension."

[3] General Statutes § 14-45 provides that failure to notify the commissioner by a person holding a license to operate a motor vehicle of his change of address within forty-eight hours of a change constitutes an infraction.

ment retains a list that corresponds to the notices sent. The motor vehicle department calls this process "bulk certified mail." The United States Postal Service, however, does not recognize a form of mail specifically termed "bulk certified mail." The department's list of notices mailed is called a receipt. It is not a postal receipt for a piece of certified mail, but it is a certificate of mailing prepared by the motor vehicle department showing that the mail was put into the United States Postal Service, and that the letters were received by the postal service. In spite of the confusion in terms, MacSweeney's testimony sufficiently established that the notice of suspension was mailed to the defendant and that it was never returned to the motor vehicle department as unclaimed mail.

The defendant testified that he never received a suspension notice. He explained to the court that he had moved from 20 Grandview Avenue to another address during the period in question, and had not notified the motor vehicle department of his change of address. Although Torma failed to notify the motor vehicle department of his change of address, he did notify the postal service on November 23, 1987. The postal notification remained in effect until June 3, 1988. The defendant's suspension was effective as of April 30, 1988, and the operation under suspension occurred on May 20, 1988.

The defendant was charged with a violation of General Statutes § 14-215[4] which requires proof of three elements: (1) that the defendant operated a motor vehicle; (2) that it was operated upon a public highway; and

---

[4] "[General Statutes] Sec. 14-215. OPERATION WHILE REGISTRATION OR LICENSE IS REFUSED, SUSPENDED OR REVOKED. (a) No person to whom an operator's license has been refused, or whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. No person shall operate or cause to be operated any

(3) that the operation occurred while his license was under suspension by the commissioner of motor vehicle. The first and second elements of the violation have been conceded by the defendant. The third element, supsension by the commissioner, requires proof of compliance with General Statutes § 14-111 (a).

General Statutes § 14-111 (a) does not require personal service of a notice of suspension but provides that "a notice forwarded by bulk certified mail to the address of the person registered as owner or operator of any motor vehicle as shown by the records of the commissioner shall be sufficient notice to such person . . . ." The statute does not require that a defendant actually receive notice, or that a motor vehicle department receive a return receipt. Constructive notice by the motor vehicle department is all that is required. *State* v. *Verdirome,* 36 Conn. Sup. 586, 421 A.2d 563 (1980). The requirements of § 14-111 (a) were satisfied by a showing of competent evidence that notice of the suspension was mailed to the defendant at his last known address as indicated by the records of the commissioner.

motor vehicle, the registration of which has been refused, suspended or revoked, or any motor vehicle, the right to operate which has been suspended or revoked.

"(b) Except as provided in subsection (c) of this section, any person who violates any provision of subsection (a) of this section shall be fined not less than one hundred fifty dollars nor more than two hundred dollars or imprisoned not more than ninety days or be both fined and imprisoned for the first offense, and for any subsequent offense shall be fined not less than two hundred dollars nor more than six hundred dollars or imprisoned not more than one year or be both fined and imprisoned.

"(c) Any person who operates any motor vehicle during the period his operator's license or right to operate a motor vehicle in this state is under suspension or revocation on account of a violation of subsection (a) of section 14-227a, subsection (d) or (f) of section 14-227b, or section 53a-56b or 53a-60d, shall be fined not less than five hundred dollars nor more than one thousand dollars and imprisoned not more than one year, thirty days of which may not be suspended or reduced in any manner."

Regardless of the defendant's ignorance of the law, he remained obligated under General Statutes § 14-45 to notify the commissioner of his change of address. Further, the defendant knew that a suspension notice was being sent because of his earlier conviction. He should not have relied on the change of address form filed with the postal service to insure his receipt of that notice.

The defendant argues that the state could not comply with the requirements of § 14-111 (a) because there is no such thing as "bulk certified mail." His argument is unpersuasive because, as we have previously discussed, the requirements of § 14-111 (a) are satisfied by mailing the notice of suspension to the defendant's last known address, and the department's certificate of mailing is sufficient to establish that the defendant received statutory notice of suspension.[5]

The defendant next argues that even if § 14-111 (a) is construed to mean that notice by a certificate of bulk mailing is all the notice required, then as a matter of law the state offered no admissible evidence on that issue. We do not agree.

The state offered two documents as the sole proof of mailing, namely, a copy of the suspension notice, and the certificate of mailing. These were admitted pursuant to the business records exception to the hearsay rule, General Statutes § 52-180.[6]

---

[5] The phrase "bulk certified mail" was substituted for "registered or certified mail" by Public Acts 1979, No. 79-249, § 1, and was enacted to effectuate a change in that existing law. During the Senate debate in the approval of the amendment Senator Stephen C. Casey remarked: "This is a very good proposal coming from the Transportation Committee. It is to allow the suspension notices from the Motor Vehicle Department to the drivers in the state to be sent out not by certified mail as the process is now but by bulk rate mail with a saving to the state analyzed at sixty-eight thousand dollars, Mr. President." 22 S. Proc., Pt. 1, 1979 Sess., p. 268.

[6] "[General Statutes] Sec. 52-180. ADMISSIBILITY OF BUSINESS ENTRIES AND PHOTOGRAPHIC COPIES. (a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of

The defendant argues that MacSweeney was not a competent witness particularly as to the third foundation requirement of § 52-180, and that the documents were computer generated. There are three criteria for admission of documents under the business records exception as set forth by General Statutes § 52-180: (1) the record must be made in the regular course of business; (2) it must be the regular course of business to make such a record; and (3) the record must be made at the time of the act, transaction or event, or within a reasonable time thereafter. *Emhart Industries, Inc.*

any act, transaction, occurrence or event, shall be admissible as evidence of the act, transaction, occurrence or event, if the trial judge finds that it was made in the regular course of any business, and that it was the regular course of the business to make the writing or record at the time of the act, transaction, occurrence or event or within a reasonable time thereafter.

"(b) The writing or record shall not be rendered inadmissible by (1) a party's failure to produce as witnesses the person or persons who made the writing or record, or who have personal knowledge of the act, transaction, occurrence or event recorded or (2) the party's failure to show that such persons are unavailable as witnesses. Either of such facts and all other circumstances of the making of the writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect the weight of the evidence, but not to affect its admissibility.

"(c) Except as provided in chapter 3, if any person in the regular course of business has kept or recorded any memorandum, writing, entry, print, representation or combination thereof, of any act, transaction, occurrence or event, and in the regular course of business has caused any or all of them to be recorded, copied or reproduced by any photographic, photostatic, microfilm, microcard, miniature photographic or other process which accurately reproduces or forms a durable medium for so reproducing the original, the original may be destroyed in the regular course of business unless its preservation is otherwise required by statute. The reproduction, when satisfactorily identified, shall be as admissible in evidence as the original in any judicial or administrative proceeding, whether the original is in existence or not, and an enlargement or facsimile of the reproduction shall be likewise admissible in evidence if the original reproduction is in existence and available for inspection under direction of court. The introduction of a reproduced record, enlargement or facsimile shall not preclude admission of the original.

"(d) The term 'business' shall include business, profession, occupation and calling of every kind."

v. *Amalgamated Local Union 376, U.A.W.,* 190 Conn. 371, 383–84, 461 A.2d 422 (1983).

The state established all of the criteria set forth in § 52-180 through MacSweeney's testimony. It established that such notices are maintained and sent in the regular course of motor vehicle department business and are a function of that department. Further, MacSweeney testified that it is the usual course of business for the white copy to go to the driver and the pink copy to be retained in the department's file. He also identified the certificate of mailing as a document that is kept in the usual course of business. This testimony was based on either MacSweeney's observations or on the observations of another who, in the course of business, transmitted the information to MacSweeney. *State* v. *Sharpe,* 195 Conn. 651, 663, 491 A.2d 345 (1985). Further, MacSweeney need not have had personal knowledge of the event, because circumstances such as those that surround the mailing or production of a document affect the weight rather than the admissibility of that writing. General Statutes § 52-180 (b).

Since the defendant failed to raise the issue of computer generated documents regarding these two items at trial, we decline to review this claim now. *State* v. *Pettersen,* 17 Conn. App. 174, 185, 551 A.2d 763 (1988).

The defendant next claims that the trial court erred in failing to charge in accordance with his request to charge. The defendant concedes that the court charged in substantial accordance with his request; *State* v. *Harrell,* 199 Conn. 255, 269–70, 506 A.2d 1041 (1986); except as to the rebuttable nature of the notice required for proof of conviction. The pertinent part of the defendant's request was as follows: "If you find that the state had notified the defendant by bulk certified mail at his last listed address as is the case here, and the defendant testifies that he did not receive notice,

then the state must prove by some other evidence, beyond a reasonable doubt, that the defendant received actual notice."

The defendant argues that since notice is an essential element to be proven, constructive notice creates a type of irrebuttable presumption that shifts the burden of proof as to an essential element of the crime in violation of the defendant's due process rights. This argument is not persuasive.

As we have discussed previously, actual notice is not required to convict a defendant under General Statutes § 14-215. It, therefore, was not error for the trial court to refuse to charge in accordance with the defendant's request.

The defendant's final claim of error alleges that the trial court erred in enhancing his sentence under General Statutes § 14-215 (c) in spite of the fact that the state did not charge him in a two-part information pursuant to Practice Book § 619.[7] We agree.

Over the defendant's objection, he was sentenced to nine months suspended after sixty days with probation for eighteen months.

The state concedes and we agree that a two-part information is required under our rules of practice whenever the state seeks an enhanced penalty. The purpose of this rule is to assure that the defendant is given

---

[7] Practice Book § 619 provides: "Where the information alleges, in addition to the principal offense charged, a former conviction or convictions, such information shall be in two separate parts, each signed by the prosecuting authority. In the first part, the particular offense with which the accused is charged shall be set out, and in the other part the former conviction or convictions shall be alleged. In alleging the former conviction, it is sufficient that the information allege the date when, the town or city where, and the court wherein such conviction was obtained and the crime of which the defendant was convicted, all of which may be stated in accordance with the provisions of Sec. 618."

adequate notice of the charge against him so that he may properly prepare his defense. Although a prosecution involving a two-part information requires two separate procedures, it remains a prosecution under one information. The second part of the information must be proven, however, before the enhanced penalty can be imposed. *State* v. *LaSelva,* 163 Conn. 229, 233–34, 303 A.2d 721 (1972).

There is error in part, the judgment is set aside only as to the sentence imposed and the case is remanded with direction to sentence the defendant under the provisions of General Statutes § 14-215 (b).

In this opinion the other judges concurred.