**CITY OF BISMARCK, Plaintiff and Appellee,**

v.

**Dennis Lee LEMBKE, Defendant and Appellant.**

**Cr. No. 950074.**

Supreme Court of North Dakota.

Nov. 30, 1995.

Paul H. Fraase (argued), City Prosecutor, Bismarck, for plaintiff and appellee.

LaRoy Baird, P.C., Bismarck, for defendant and appellant; argued by LaRoy Baird, III.

MESCHKE, Justice.

Dennis L. Lembke appeals his conviction for driving while under suspension. We hold the trial court correctly rejected Lembke's affirmative defense of excuse or justification because he unreasonably formed his belief that a policeman compelled him to drive. We affirm the conviction.

Early November 17, 1993, police responded to a report of a prowler at a house that Lembke rented. Lembke had agreed to move out by the end of November, and had begun moving two days before. Because Lembke's driver's license had been suspended, he said his girlfriend helped him move by driving his pickup. After the two returned to the house at 1:00 a.m. on November 17, Lembke's girlfriend left in her own car. Since the locks had been changed, Lembke climbed into the house through a window and was watching television an hour later when the police arrived.

Lembke let the officers in, and the owner of the house was soon called. When Lembke and the owner began arguing, the officers asked Lembke to spend the night someplace else. Lembke agreed to leave and to return the next day to pick up the rest of his belongings. According to Lembke, the closest place for him to spend the night was over a mile away.

When Lembke left the house, Officer Charles Wegener followed him outside "for safety reasons." Although Wegener said he was not "concerned about [Lembke's pickup] being removed," he was worried about it as a source for a weapon if Lembke did not leave. Wegener testified:

A. Well, ... when we went [out of] the house, he stopped at the end of the sidewalk. He just kind of looked at me. He was looking around and he wasn't leaving, he just—was just kind of standing there. I asked him if he had any questions.

Q. Did he respond?

A. Yes. He asked me what time he was supposed to be back in the morning. I told him 9:00.

Q. And then what happened?

A. He just stood there again, didn't say anything. So, then I asked him if he had any other questions. He kind of [stood] like he was thinking, and then he said he didn't.

Q. No. What did he do?

A. At that point in time I says, you'll have to leave now. And when you come back, make sure you bring a police officer with you, because that's the arrangements that were made on the inside.

Q. And did he leave?

A. Well, he looked at me, then he looked at his truck that he left in the driveway, and looked back at me and looked at the truck, and then got in his truck and left.

Lembke thus did not ask about another possible way to leave.

Lembke, on the other hand, testified that Wegener told him to leave in the pickup, and that he did not believe that he had any alternative:

A. The first instance he told me to leave, I looked up and down the sidewalk, and then I turned around. And then he told me to get into my pickup and leave.

Q. Did you suggest to him that you were not interested in leaving?

A. No.

Q. Did you feel at that point that you had any choice but to get in your pickup and leave?

A. No.

Q. Why is that?

A. It's been my experience when a police officer tells you to do something, you do it.

Q. In your opinion, were you acting at the lawful direction of this police officer?

A. Yes, sir.

Q. Did you feel in your mind that you had any other alternative but to get in your pickup and leave?

A. No, I didn't question the officer.

Q. In your mind, did you—Had you formed an opinion as to what would have happened to you if you had not gotten into that pickup and left?

A. No, I didn't. I just—The officer told me to leave. To get in and leave. I got in and left.

After Lembke drove away, Wegener became suspicious, checked Lembke's license status, and learned that his license was suspended. The police later charged Lembke with driving while under suspension.

At a trial without a jury, Lembke admitted he drove although his license had been suspended. For a defense, Lembke relied upon part of NDCC 12.1–05–10:

> In a prosecution for an offense which does not constitute a felony, it is an affirmative defense that the actor engaged in the proscribed conduct because he was compelled to do so by force or threat of force. Compulsion within the meaning of this section exists only if the force, threat, or circumstances are such as would render a person of reasonable firmness incapable of resisting the pressure.

Citing *State v. Rasmussen*, 524 N.W.2d 843 (N.D.1994), Lembke asserted excuse or justification as an affirmative defense. Lembke claimed that he had no choice because, if he had not driven away, Officer Wegener would have arrested him.

The trial court, relying on *State v. Nygaard*, 447 N.W.2d 267 (N.D.1989), ruled that an excuse or justification defense fails if the defendant negligently or recklessly forms the belief of compulsion. In convicting Lembke, the court found:

> I find that your belief, if you had one, that you were operating under the [compulsion of] law by leaving in that pickup was negligently or recklessly held. I think you had other alternatives available to you. You could have called your ladyfriend Denise. You could have asked the Officer to take you somewhere, you could have done a number of things. You could have walked, but you didn't.

The court thus concluded Lembke did not reasonably believe he was compelled to drive.

Lembke appealed, arguing the trial court erred in how it applied the law of the affirmative defense of excuse or justification. We disagree.

■ In *Rasmussen*, 524 N.W.2d at 845–46, we held that "[a]n affirmative defense under N.D.C.C. § 12.1–05–10 is available for driving under suspension when the compulsion is from life-threatening forces of nature." Lembke concedes that his case does not involve that degree of compulsion, but he contends that "under a reasonable expansion of the *Rasmussen* decision, the affirmative defenses of excuse and justification are available" to him, as well.

■ What conduct can be "justified or excused" is defined in our criminal code. NDCC ch. 12.1–05. In *State v. Ronne*, 458 N.W.2d 294, 296 (N.D.1990), we described the difference between "excused" and "justified" conduct:

> Sections 12.1–05–02 through 12.1–05–07, N.D.C.C., describe the types of conduct that are justified and reflect society's determination that the actual existence of certain circumstances makes proper and legal what otherwise would be criminal conduct. In contrast, excused conduct, as defined in Section 12.1–05–08, N.D.C.C., recognizes the criminality of conduct but excuses it because the actor reasonably but mistakenly believed that circumstances actually existed which would justify that conduct.

(citations omitted). *State v. Leidholm*, 334 N.W.2d 811, 814–15 (N.D.1983), gives more explanation of the difference, and concludes "the decisive issue under our law of self-defense is not whether a person's beliefs are correct, but rather whether they are reasonable and thereby excused or justified." Thus, if Lembke's conduct was either justified in actuality, or excused because he "reasonably but mistakenly believed that circumstances actually existed which would justify [his] conduct," Lembke would have a valid affirmative defense.

Lembke asks us to allow justification as an affirmative defense to a driving-under-suspension charge when a police officer directs a person to drive, with the threat of arrest, and when no other alternative exists. We agree that the law may support justification on those specific facts, but we do not agree that those are the facts here.

Rather, Lembke had other alternatives, like walking or asking Officer Wegener for a ride, as the trial court expressly found. In a criminal case, we will not overturn a finding of fact unless clearly erroneous. *City of Fargo v. Ternes,* 522 N.W.2d 176, 177 (N.D.1994). Because there is ample evidence for the court's finding that Lembke had other alternatives, Lembke's driving while under suspension was not justified.

If not actually justified, Lembke might be excused if he reasonably believed that Officer Wegener ordered him to drive with a suspended license, and that he had no other choice. Even if Lembke believed that he had no choice but to drive, the trial court found that belief was formed unreasonably. Relying upon *Nygaard,* 447 N.W.2d at 272, the trial court correctly decided that this finding precluded the affirmative defense of excuse.

Lembke argues that the trial court's decision that he negligently or recklessly believed that he had no choice but to drive, was "inappropriate in that a negligently and recklessly formed belief should cause a defense to fail only if it is formed at the time of a commission of an offense where the culpability for that offense is one grounded in negligence or recklessness." Because driving under suspension is a strict liability offense, Lembke argues the court incorrectly applied a culpability to his affirmative defense. We disagree.

We addressed a like argument in *Nygaard.* Nygaard had been charged with failing to stop and notify an owner upon striking an unattended vehicle, a strict liability offense. *Id.* at 269. At trial, Nygaard argued that she did not know she had hit the vehicle, but the court denied her request for a jury instruction based on the affirmative defense of excuse under NDCC 12.1–05–08. *Id.* In affirming Nygaard's conviction, we explained

that, "under Section 12.1–05–08, if the 'belief is negligently or recklessly held, it is not an excuse in a prosecution for an offense for which negligence or recklessness, as the case may be, suffices to establish culpability.' " *Id.* at 272 (quoting NDCC 12.1–05–08). Because Nygaard was charged with a strict liability offense, we concluded that "negligence or recklessness is more than sufficient to establish culpability." *Id.*

*Nygaard* makes it clear that an unreasonably held belief precludes the affirmative defense of excuse for a strict liability offense. Compulsion as an affirmative defense of excuse under NDCC 12.1–05–10, too, "exists only if the ... circumstances ... would render a person of reasonable firmness incapable of resisting the pressure." Here, Officer Wegener asked twice if Lembke had any questions, giving Lembke reasonable opportunity to find out if Wegener really expected him to drive with a suspended license. Lembke could have walked or asked for a ride. As the trial court found, Lembke unreasonably believed he had no choice but to drive with a suspended license.

The conviction is affirmed.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.