1999 ND 59

**STATE of North Dakota, Plaintiff and Appellee**

v.

**Benjamin J. EGAN, Defendant and Appellant**

**No. 980219.**

Supreme Court of North Dakota.

April 6, 1999.

Bruce A. Romanick, Assistant State's Attorney, Bismarck, ND, for plaintiff and appellee.

Chad R. McCabe, of Vinje Law Firm, Bismarck, ND, for defendant and appellant.

MARING, Justice.

[¶ 1] Benjamin J. Egan appealed from a conviction entered upon a jury verdict finding him guilty of driving under suspension. We hold the trial court erred in refusing to allow Egan to present evidence that he did not receive a notice of opportunity for hearing on his license suspension and in refusing to instruct the jury on that issue. We reverse and remand for further proceedings.

[¶ 2] On August 7, 1997, Egan, a licensed North Dakota driver, pled guilty in South Dakota to driving a motor vehicle while under the influence of alcohol. The South Dakota court certified Egan's conviction to the North Dakota Department of Transportation (DOT). At the time, Egan listed his address with DOT as 525 Valley Street in Minot, which was his mother's address. On August 18 or 19, 1997, Egan's mother moved to 215 6th Street N.E. in Minot.

[¶ 3] On August 20, 1997, DOT sent Egan a notice of opportunity for hearing on suspension by first class mail to 525 Valley Street in Minot. According to Egan, he did not receive the notice of opportunity for hearing, and on August 28, 1997, he went to the Minot DOT office where he was informed his license was not presently under suspension, but he was not informed the notice of opportunity for hearing had been sent to him. On September 2, 1997, Egan notified the post office he had changed his address to 215 6th Street N.E. in Minot, but he did not inform DOT within ten days of moving as required by N.D.C.C. § 39–06–20. When Egan failed to request a hearing on the suspension, DOT suspended his license on September 9, 1997.

[¶ 4] On September 16, 1997, Egan was stopped for speeding near Bismarck. A check of Egan's driving record revealed his license had been suspended, and he was charged with driving under suspension. At trial Egan requested jury instructions on lack of notice under *State v. Knittel,* 308 N.W.2d 379 (N.D.1981), and on mistake of law. The trial court denied Egan's requests, and a jury found him guilty of driving under suspension. Egan appealed.

[¶ 5] Egan contends the trial court erred in denying his request for a jury instruction under *Knittel* [1] and refusing to al-

---

1. Egan requested the following instruction:

    When a criminal prosecution may be based upon the suspension of a driver's license, due process requires notice and an opportunity for a hearing except in emergency circumstances.
      Therefore, notice of an opportunity for a hearing sent by regular mail is insufficient to

low him to present evidence he did not receive the notice of opportunity for hearing.

[¶ 6] In *Knittel*, we considered an issue about a defendant's failure to receive notice of an opportunity for hearing on a license suspension in the context of a criminal prosecution for driving under suspension. After the State introduced into evidence the notice of hearing, the order of suspension, and the computer printout recording the license suspension, the defendant testified he did not receive the notice of opportunity for hearing or the order of suspension. *Knittel*, 308 N.W.2d at 380–81. The trial court dismissed the action, finding the defendant was deprived of due process because he had not received the notice of opportunity for hearing or the notice of suspension. *Id.* at 381.

[¶ 7] We dismissed the State's appeal, concluding the trial court's finding the defendant did not receive notice of opportunity for a hearing involved a factual element of the offense of driving under suspension which prohibited reprosecution under the double jeopardy clause of the federal constitution. *Knittel* at 384. We said, except in emergency situations, due process requires notice and opportunity for a hearing before the state may suspend a drivers license. *Id.* at 382. *See Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971). We construed N.D.C.C. § 39–06.1–10(1) and (5) to require more than constructive notice of an opportunity for a hearing to meet due process requirements of the federal constitution. *Knittel* at 383. Although we declined to require actual notice of a suspension as a condition precedent to the suspension, we said "notice of an opportunity for a hearing sent by regular mail is insufficient to guarantee due process when the presumption of receipt raised by Section 31–11–03(24), N.D.C.C., is rebutted, especially when the period of suspension may be extended one day for each day a driver fails to surrender his license and a criminal prosecution may be based upon such a suspension." *Knittel* at 384.

[¶ 8] Since *Knittel*, we have continued to recognize a defendant's failure to receive notice of opportunity for a hearing involves a

guarantee due process when the presumption

decision on a factual element of a prosecution for driving under suspension. *See State v. Tininenko*, 371 N.W.2d 762, 764–65 (N.D. 1985) (holding sufficient evidence supported trial court's factual decision defendant's evidence failed to rebut statutory presumption of delivery of notice); *State v. Obrigewitch*, 356 N.W.2d 105, 108–09 (N.D.1984) (holding sufficient evidence supported trial court's factual decision defendant knew his license was suspended and temporary operator's permit had expired); *State v. Moore*, 341 N.W.2d 373, 375 (N.D.1983) (holding sufficient evidence supported conviction where defendant had actual notice his license was revoked).

■ [¶ 9] Under *Knittel* and its progeny, a defendant is entitled to present evidence showing nonreceipt of notice of opportunity for a hearing to rebut the presumption "a letter duly directed and mailed was received in the regular course of the mail" under N.D.C.C. § 31–11–03(24). *Knittel*, however, did not involve a defendant who had failed to notify DOT of a change of address, and the State argues Egan is estopped from raising *Knittel*, because he failed to notify DOT of his change of address within ten days as required by N.D.C.C. § 39–06–20. Within the time frames of this case, we reject the State's argument.

[¶ 10] Section 39–06–20, N.D.C.C., requires a licensee to inform DOT of a change of address within ten days after changing addresses. In *State v. Johnson*, 139 N.W.2d 157 (N.D.1965), we addressed a defendant's argument he could not be convicted of driving under suspension, because he had not actually received an order of suspension mailed to him at his address listed with DOT. The defendant claimed he had not received the suspension because he had moved to a different address. We rejected the defendant's argument, concluding:

> If he moved from the address which is shown on his application or in the license issued to him, and thereafter changed his address, it became his duty, within ten days after such change of address, to notify the Commissioner in writing of his old

of receipt is rebutted.

and his new addresses. Sec. 39–06–20, N.D.C.C.

If he failed to do this, he cannot complain if the notice which was mailed to him at the address shown on his application and his license was not addressed correctly.

*Johnson* at 159.

[¶ 11] Other courts have recognized a licensee's failure to notify the appropriate licensing agency of a change of address is not a defense to a subsequent prosecution for driving under suspension or revocation. *See State v. Torma*, 21 Conn.App. 496, 574 A.2d 828, 831 (1990); *State v. Lawton*, 581 A.2d 793, 795 (Me.1990); *McShane v. Commissioner*, 377 N.W.2d 479, 481–82 (Minn.Ct. App.1985); *Zamarripa v. First Judicial Dist.*, 103 Nev. 638, 747 P.2d 1386, 1389–90 (1987); *State v. Cox*, 98 Ohio App.3d 318, 648 N.E.2d 563, 564 (1994); *State v. Hayes*, 99 Or.App. 387, 782 P.2d 177, 178 (1989); *Davis v. West Virginia*, 187 W.Va. 402, 419 S.E.2d 470, 472–73 (1992); *State v. Kemp*, 106 Wis.2d 697, 318 N.W.2d 13, 19 (1982). None of those cases, however, indicate whether the appropriate notice was sent during the interval when the licensee could timely notify the designated agency of an address change.

[¶ 12] Our decision in *Johnson* also does not specifically recite when the defendant changed addresses in relation to DOT mailing the order for suspension. Here, according to Egan's offer of proof, his mother moved on August 18 or 19, 1997, and on August 20, 1997, DOT sent him a notice of opportunity for hearing on suspension to his previous address. When DOT sent Egan the notice of opportunity for hearing, the statutory time frame for him to notify DOT of his change of address had not yet expired. This case thus represents a hybrid between *Knittel* and *Johnson.*

[¶ 13] Under these circumstances, we reject the State's argument Egan's failure to notify DOT of his change of address totally foreclosed him from relying on *Knittel.* We conclude Egan was entitled to present evidence to rebut the presumption "a letter duly directed and mailed was received in the regular course of the mail" under N.D.C.C. § 31–11–03(24).[2] We also conclude the State was entitled to present evidence regarding the credibility of Egan's claim he did not receive the notice, *see Tininenko*, 371 N.W.2d at 764–65, and the DOT internal procedures for renotification of a pending license suspension when it receives a change of address. If the trier of fact finds that when DOT receives a change of address, it renotifies a licensee of pending suspension proceedings, Egan's failure to notify DOT of a change of address precludes him from claiming lack of notice under *Johnson.* If, however, the trier of fact finds DOT does not renotify a licensee of pending suspension proceedings, Egan's failure to notify DOT of a change of address does not preclude him from claiming lack of notice under *Knittel.*

[¶ 14] Egan's requested jury instruction on *Knittel, see* n.1, is incomplete and misleading, because it could be interpreted to instruct the jury that notice by regular mail does not satisfy due process. On remand, the trial court and counsel must fashion an appropriate instruction regarding whether, after DOT sent Egan the notice of opportunity for hearing, DOT had a regular procedure for renotifying a licensee of a pending suspension proceeding upon receipt of change of address under N.D.C.C. § 39–06–20. The court and counsel must also fashion instructions, within the context of *Knittel* and the usual burden of proof in a criminal case, regarding Egan's right to notice and the rebuttable presumption under N.D.C.C. § 31–11–03(24) that "a letter duly directed and mailed was received in the regular course of the mail."

2. Contrary to Egan's assertion, DOT was not required to send the notice of opportunity for hearing by certified mail. Under *Knittel*, Egan was entitled to notice reasonably calculated under all the circumstances to apprise him of the pendency of the license suspension and afford him an opportunity to present his objections. *See Mullane v. Central Hanover Bank & Trust Co.,*

339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The Legislature has authorized sending notice by regular mail, N.D.C.C. § 39–06–33(1) and (3), and under N.D.C.C. § 31–11–03(24), a rebuttable presumption exists that a letter duly directed and mailed was received in the regular course of the mail.

◼ [¶ 15] Although the *Knittel* and *Johnson* issues are dispositive of this appeal, we address an additional issue raised by Egan because of the likelihood of its reoccurrence on remand. *See State v. Michlitsch*, 438 N.W.2d 175, 179 (N.D.1989).

[¶ 16] Egan asserts the trial court erred in refusing to instruct the jury on mistake of law under N.D.C.C. § 12.1–05–09.[3] He argues he was entitled to the instruction because he went to the Minot DOT office on August 28, 1997, to inquire about the status of his license, and he relied upon a DOT employee's statement his license was not suspended.

[¶ 17] In *State v. Fridley*, 335 N.W.2d 785, 789–90 (N.D.1983), we held a mistake of law defense was not applicable to a prosecution for the strict liability offense of driving under suspension. Egan argues *Fridley* is distinguishable because there the defendant had notice his license had been suspended. That distinction may be relevant to the *Knittel* issue, but we are not persuaded it is legally relevant to a mistake of law issue.

[¶ 18] Egan also argues *Fridley* has been overruled by *Michlitsch*, 438 N.W.2d at 178, and *State v. Rasmussen*, 524 N.W.2d 843 (N.D.1994).

[¶ 19] In *Michlitsch*, 438 N.W.2d at 178, we held an affirmative defense is available to a charge of the strict liability offense of possession of a controlled substance with intent to deliver, if the defendant unwittingly or unknowingly possessed the controlled substance. We reasoned:

> Although we adhere to our conclusion that the Legislature intended that possession of a controlled substance and possession with intent to deliver constitute strict liability offenses, it would be difficult to sustain these statutory provisions, the violation of which are punishable as felonies in many circumstances, against a constitutional attack when mounted by a person who possessed the controlled substance unwitting-

ly.... The [*State v. Cleppe*, 96 Wash.2d 373, 635 P.2d 435 (1981)] affirmative defense scheme is a logical accommodation which recognizes the reasons for both the legislative designation of the crimes as strict liability offenses and the constitutional interests of the accused.

*Michlitsch* at 178.

[¶ 20] In *Rasmussen*, 524 N.W.2d at 846, we held an affirmative defense under N.D.C.C. § 12.1–05–10 is available for driving under suspension when the compulsion to drive is from life-threatening forces of nature. In *City of Bismarck v. Lembke*, 540 N.W.2d 155, 158 (N.D.1995), we further suggested other facts may support justification as an affirmative defense to the strict liability offense of driving under suspension. In *Lembke* the defendant claimed a police officer directed him to drive, with the threat of arrest, when no other alternative existed. We rejected the claimed justification defense because the evidence indicated the defendant had alternatives to driving when his license was suspended. *Id.*

◼ [¶ 21] In summary, other than life-threatening circumstances like *Rasmussen*, we have not recognized an affirmative defense to the strict liability offense of driving under suspension. We decline to extend the mistake of law defense to a situation where a licensee inquires about the status of his license and is correctly advised his license is not presently suspended. We reject Egan's argument the defense of mistake of law applies to his claimed reliance on a DOT employee's August 28, 1997 statement his license was not suspended when his license was not suspended until September 9, 1997, and we hold the trial court did not err in refusing to give Egan's requested instruction on mistake of law.

[¶ 22] Egan also claims he was denied the right to counsel during the administrative proceeding to suspend his license and was later subjected to a mandatory minimum jail

---

**3.** Egan requested the following instruction:

A person's good faith belief that his conduct is not criminal is an affirmative defense if he acted in reasonable reliance upon a statement of the law contained in [a statute or other enactment] [a judicial decision, opinion, order, or judgment] [an administrative order or grant of permission] or [an official interpretation of the public servant or body charged by law with responsibility for the interpretation, administration, or enforcement of the law defining the crime.]

sentence as a result of the license suspension. Egan did not raise this issue at trial, and we decline to address it on appeal. *See, e.g., Ohio Cas. Ins. Co. v. Horner,* 1998 ND 168, ¶ 26, 583 N.W.2d 804.

[¶ 23] We reverse Egan's conviction and remand for a new trial.

[¶ 24] NEUMANN, SANDSTROM and KAPSNER, JJ., concur.

VANDE WALLE, Chief Justice, dissenting.

[¶ 25] Benjamin Egan's address was effectively changed on August 18 or 19, 1997, when his mother moved from that address which Egan also listed as his address. At the time section 39–06–20, N.D.C.C. provided:

> Whenever a person after ... receiving an operator's license ... moves from the address named in the application or in the license ... issued to that person ... that person shall within ten days thereafter notify the director in writing or in person of that person's old and new address....

[¶ 26] Egan gave no notice, oral or written, of his change of address within the ten day period. He did go to the Department's Minot office and was told his license was not under suspension after, presumably, he asked as to the status of his license because he was concerned about the effect of his conviction in South Dakota for driving while under the influence of alcohol. While at the Minot office, Egan apparently did not tell the Department about the address change which took place some 9 or so days before.

[¶ 27] The Department's notice to Egan was sent prior to the expiration of the period which Egan had to notify the Department of his change in address. Without evidence to the contrary, we should not assume the Department would have failed to send another notice if they received a timely change of address from Egan.

[¶ 28] I do not agree with the majority that this is a hybrid between *State v. Knittel,* 308 N.W.2d 379 (N.D.1981) and *State v. Johnson,* 139 N.W.2d 157 (N.D.1965). In *Knittel,* the driver had not changed his address. In *Johnson,* as the majority notes, the court said that if the driver failed to notify the Department of his change of address within ten days after the change "he cannot complain if the notice which was mailed to him at the address shown on his application and his license was not addressed correctly." *Johnson,* at 159. In *Johnson,* the Syllabus by the Court[4] states:

1. Where a defendant is served with order of suspension of his driver's license by the mailing of copy of such order to him at the address shown on his application for driver's license or address shown on such license, he cannot complain on the ground that he no longer lives at that address. The law requires the holder of a driver's license to notify the Highway Commissioner in writing of any change of address within ten days after such change. Sec. 39–06–20, N.D.C.C.

[¶ 29] The relevant facts here are the same. Egan failed to notify the Department of his change of address within ten days. Although the majority attempts to distinguish *Johnson* on the basis the decision in that case does not specifically state when the defendant changed address in relation to the Department mailing the order for suspension, I believe that is irrelevant as Egan did not give notice of his change of address within ten days as required by law. Because he failed to do this he cannot complain that the notice did not contain his current address and he therefore did not receive it.

[¶ 30] I would affirm the decision of the trial court.

[¶ 31] Gerald W. VandeWalle, C.J.

---

4. At the time the opinion was written in 1965, Section 102 of the North Dakota Constitution required the Court to "prepare a syllabus of the points adjudicated in each case ... prefixed to the published reports of the case." Section 102 was repealed by art. amd. 97, approved September 7, 1976 (S.L.1975, ch. 615, § 2; 1977, ch. 599).