Filed 1/24/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 31

State of North Dakota, Plaintiff and Appellee

v.

Mark Terrence Brown, Defendant and Appellant

Nos. 20170047 - 20170050

Appeal from the District Court of Williams County, Northwest Judicial District, the Honorable Kirsten Marie Sjue, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Nathan K. Madden, Assistant State’s Attorney, Williston, N.D., for plaintiff and appellee.

Laura C. Ringsak, Bismarck, N.D., for defendant and appellant; submitted on brief.

State v. Brown

Nos. 20170047 - 20170050

Tufte, Justice.

[¶1] Mark Terrence Brown appeals from four criminal judgments entered after the district court found him guilty of driving while under suspension on four separate occasions.  Brown argues there was insufficient evidence to support the convictions and the district court erred in enhancing the classification for the final conviction to a class A misdemeanor.  We affirm.

I

[¶2] The State charged Brown with four separate acts of driving while his license was suspended after law enforcement officers observed him driving a motor vehicle without a license on October 26, 2015, December 17, 2015, January 15, 2016, and February 18, 2016.  The four charges were tried in a series of separate bench trials on October 12, 2016.

[¶3] At the first trial, Williams County Deputy Sheriff Daniel Barstad testified he stopped Brown on October 26, 2015, for speeding.  Deputy Barstad testified Brown did not have a driver’s license, he identified himself with his North Dakota identification card as Mark Terrence Brown, and he told Deputy Barstad “his license was suspended out of Washington.”  At that trial, the State also introduced into evidence a June 6, 2016, certified copy of a driver’s record from the District of Columbia Department of Motor Vehicles indicating a Mark Terrence Brown with the same date of birth as the defendant had a suspended driver’s license.  Brown testified that he had been issued a driver’s license from the District of Columbia and that he had never received notice from the District of the right to a hearing to contest any suspension, or notice that his license had been suspended.  According to Brown, it was “not entirely true” that he told Deputy Barstad his license was suspended; rather, he claimed he told Deputy Barstad there were “some issues that were in error with the District of Columbia.”  Brown also testified he had been denied a North Dakota driver’s license because of a clerical error in the District of Columbia and he had been told by North Dakota law enforcement officers that his license was suspended.  After both parties rested, the district court found Brown guilty of driving while under suspension on October 26, 2015.

[¶4] At the second trial, North Dakota Highway Patrolman Daniel Hanson testified he stopped Brown on December 17, 2015, for swerving and crossing the center line.  Trooper Hanson testified Brown did not have a driver’s license but he provided a North Dakota identification card and a Washington, D.C., identification card.  According to Hanson, a check of Brown’s driving status indicated his license was suspended in Washington, D.C., and the State introduced into evidence the certified copy of the driver record for a Mark Terrence Brown from the District of Columbia.  The State then called Deputy Barstad to testify in the second trial, and the court sustained Brown’s relevancy objection to a question about statements made by Brown during the October 26, 2015, traffic stop.  The State thereafter rested its case, and the parties stipulated to consideration of Brown’s testimony from the first trial at the second trial.  Brown did not offer any further evidence and moved for a judgment of acquittal.  After argument by both parties about the relevance of Brown’s knowledge of his license suspension, the court reserved the right to revisit its decision in the first trial and requested post-trial briefs on the effect of a driver’s knowledge of a license suspension.  The court thereafter allowed the State to recall Deputy Barstad in the second trial to testify that during the October 26, 2015, traffic stop, Brown stated his license was suspended in Washington, D.C.  Brown then testified he did not tell Deputy Barstad his license was suspended in Washington, D.C.  He also testified he never received notice that his license was suspended in Washington, D.C.  He further testified that he had entered an uncounseled guilty plea to driving under suspension in Williston Municipal Court in October 2014 and that before his arrest on October 26, 2015, he had been told by North Dakota law enforcement officers that his license was suspended.

[¶5] The parties thereafter stipulated the district court could consider the previously introduced exhibits and the testimony by Deputy Barstad and by Brown in all four trials.  At the separate trial on the January 15, 2016, charge of driving under suspension, the court heard further testimony from Trooper Hanson that he had observed Brown driving without a license on that date and had arrested him for driving under suspension.  The court then conducted a separate trial on the February 18, 2016, charge of driving under suspension, and Trooper Hanson testified that he had seen Brown driving without a license on that date and had arrested him for driving under suspension.  The court thereafter took all four cases under advisement.

[¶6] After receipt of post-trial briefs, the district court separately considered each case and found Brown guilty of each charge after determining that on each occasion he had been driving with actual notice his license was suspended.  After allowing the State to amend its complaint for the charge of driving under suspension on February 18, 2016, the court relied on the convictions for the first, second, and third offenses to enhance the fourth conviction for driving under suspension on February 18, 2016, from a class B misdemeanor to a class A misdemeanor.

II

[¶7] Brown argues there was insufficient evidence for the district court to find he had notice of his license suspension.  He claims notice of an opportunity for a hearing on a license suspension is a required factual element of proof for a conviction for driving under suspension under 
State v. Knittel
, 308 N.W.2d 379 (N.D. 1981), and he argues the State failed to introduce evidence to show a notice of opportunity for a hearing or a notice of suspension was sent to him.  He claims he did not testify that he knew his license was suspended in Washington, D.C., and he contends 
State v. Moore
, 341 N.W.2d 373 (N.D. 1983), is distinguishable from his case.

[¶8] In 
Knittel
, we addressed a defendant’s claimed failure to have received notice of an opportunity for hearing on a license suspension in the context of a trial court’s dismissal of a criminal prosecution for driving under suspension.  308 N.W.2d at 381-84.  After the State introduced into evidence a notice of opportunity for a hearing mailed to the defendant, an order of suspension mailed to the defendant, and a computer printout showing the defendant’s license suspension, he testified he did not receive the notice of opportunity for hearing, or the order of suspension.  
Id.
 at 380-

81.  The trial court dismissed the prosecution, finding the defendant was deprived of due process because he had not received the notice of opportunity for hearing, or the notice of suspension.  
Id.
 at 381.

[¶9] We dismissed the State’s appeal, concluding the trial court’s finding the defendant did not receive notice of an opportunity for a hearing involved a factual element of the offense of driving under suspension, which prohibited reprosecution of the defendant under the double jeopardy clause of the federal constitution.  
Knittel
, 308 N.W.2d at 384.  We said, except in emergency situations, due process requires notice and an opportunity for a hearing before the State may suspend a driver’s license.  
Id.
 at 382.  We construed our statutes to require more than constructive notice of an opportunity for a hearing to meet the due process requirements of the federal constitution.  
Knittel
, at 383.  Although we declined to require actual notice of a suspension as a condition precedent to the suspension, we said that “notice of an opportunity for a hearing sent by regular mail is insufficient to guarantee due process when the presumption of receipt raised by Section 31-11-03(24), N.D.C.C., is rebutted, especially when the period of suspension may be extended one day for each day a driver fails to surrender his license and a criminal prosecution may be based upon such a suspension.”  
Knittel
, at 384.

[¶10] In 
Moore
, 341 N.W.2d at 374, the defendant testified he had not received notices of opportunity for a hearing and orders for suspension and claimed the trial court erred in finding him guilty of driving while his license was revoked.  We distinguished 
Knittel
 and affirmed the defendant’s conviction for driving while his license was revoked.  341 N.W.2d at 375.  We noted the defendant, in response to requests by authorities, had mailed his license to the driver’s license division on two separate occasions, he admitted he had mailed his license to the driver’s license division the second time because he was told it was revoked, and he did not have a license when he was charged with driving while his license was revoked.  
Id.
  We explained the defendant’s actions and testimony at trial revealed he knew his license was revoked when he was arrested for driving while under revocation.  
Id.
  We concluded the defendant had actual knowledge his license was revoked and affirmed his conviction.  
Id.

[¶11] Since 
Knittel
 and 
Moore
, we have continued to recognize a defendant’s claimed failure to have received notice of an opportunity for a hearing on a license suspension involves a decision on a factual element of a prosecution for driving under suspension.  
See
 
State v. Egan
, 1999 ND 59, ¶ 13, 591 N.W.2d 150 (stating defendant is entitled to present evidence showing nonreceipt of notice of opportunity for hearing and State is entitled to present evidence regarding the credibility of the defendant’s nonreceipt claim); 
State v. Tininenko
, 371 N.W.2d 762, 763-65 (N.D. 1985) (holding sufficient evidence supported trial court’s factual decision that defendant’s evidence failed to rebut statutory presumption of delivery of notice); 
State v. Obrigewitch
, 356 N.W.2d 105, 108-09 (N.D. 1984) (holding sufficient evidence supported trial court’s factual decision that defendant knew his license was suspended and temporary operator’s permit had expired).

[¶12] Under our case law, a defendant may present evidence showing nonreceipt of a notice of opportunity for a hearing on a license suspension proceeding or evidence of nonreceipt of the order of suspension, but the State is also entitled to present evidence regarding the credibility of the defendant’s claim.  Our decisions recognize the issue of receipt is a factual issue for the trier-of-fact and credible evidence of a defendant’s actual knowledge of a suspension is sufficient to support a conviction for driving under suspension.

[¶13] In 
Tininenko
, we explained our review of a trier-of-fact’s findings on conflicting evidence and the credibility of witnesses:

“On the question of credibility of witnesses, reading a cold transcript is no substitute for hearing and observing witnesses as they testify.  Tones of voice, hesitations, confusion, surprise, and other telltale indications of mental state convey to trial judges and jurors much that is lost to appellate judges.  If we were to judge from the cold print, we might decide many cases differently than trial judges do, and this case might be one of them.  But, if we decided differently, we would have no assurance that ours was the better decision.  We are reluctant to reverse factual findings of juries or trial judges.  Appellate courts have stated in many ways, in both civil and criminal cases, their determination to give respect to the findings of trial judges and juries. Sometimes they say they will not reverse if there is substantial evidence to support the verdict; sometimes they say they will not substitute their judgment for that of the trial court or jury; sometimes they speak of viewing the evidence in the light most favorable to the judgment; and sometimes they speak of their great reliance on the findings of the lower court.

“In criminal cases we have repeatedly held that ‘at the appellate level we do not substitute our judgment for that of the jury or trial court where the evidence is conflicting, if one of the conflicting inferences reasonably tends to prove guilt and fairly warrants a conviction.’

“However stated, these rules indicate a recognition that the truth can better be determined in the confrontation of the testimony of witnesses appearing in person than from a transcript of the testimony of those witnesses.”

371 N.W.2d at 764-65 (quoting 
State v. Olmstead
, 246 N.W.2d 888, 890 (N.D. 1976) (citations omitted)).

[¶14] Here, the district court heard conflicting testimony from Deputy Barstad and from Brown about Brown’s knowledge of the status of his driving privileges.  The parties stipulated to the consideration of that testimony at all four trials.  There was also evidence Brown had entered an uncounseled guilty plea in Williston Municipal Court in 2014 to another unrelated charge of driving while his license was suspended.  Moreover, in each case, there was evidence Brown did not provide arresting officers with a valid driver’s license from any jurisdiction and instead identified himself with a North Dakota identification card.  Brown also testified he previously had been told by North Dakota law enforcement officers that his driver’s license was suspended.

[¶15] In all four separate trials, the district court was entitled to believe Deputy Barstad’s testimony that Brown told the officer his license was suspended when Brown was stopped for speeding on October 26, 2015.  There was substantial competent evidence to support the court’s factual determination in each case that Brown knew his license was suspended.  We do not reweigh the conflicting evidence about Brown’s knowledge, and we conclude there is sufficient competent evidence to support Brown’s convictions.

III

[¶16] Brown argues the district court erred in enhancing the classification of his conviction for the February 18, 2016, charge from a class B misdemeanor to a class A misdemeanor for a fourth offense within a five-year period.  He claims that prior to the State presenting its case at trial for the February 18, 2016, charge, he did not have three prior convictions for driving under suspension.

[¶17] Section 39-06-42(1), N.D.C.C., authorizes the enhancement of the classification for driving under suspension for a fourth offense within a five-year period and provides:

Except as provided in section 39-06.1-11, an individual who operates a motor vehicle on a highway or on public or private areas to which the public has a right of access for vehicular use in this state while an individual’s operator’s license is suspended or revoked in any jurisdiction is guilty of a class B misdemeanor for the first, second, or third offense within a five-year period.  Any subsequent offense within the same five-year period is a class A misdemeanor.

[¶18] Statutory interpretation is a question of law, fully reviewable on appeal.  
State v. Skarsgard
, 2007 ND 159, ¶ 5, 740 N.W.2d 64.  Our primary objective in interpreting statutes is to determine legislative intent, as that intent is expressed in the language of the statute.  
Id
.  Statutory provisions are given their plain, ordinary, and commonly understood meaning, unless they are specifically defined or a contrary intention plainly appears.  N.D.C.C. § 1-02-02.  Words and phrases are construed according to the context in which they are used, and technical words defined by statute are construed according to that definition.  N.D.C.C. § 1-02-03.  Statutes are construed as a whole and harmonized to give meaning to related provisions.  N.D.C.C. § 1-02-07.  Statutes are construed to give effect to all of their provisions so no part of a statute is rendered inoperative or superfluous.  N.D.C.C. § 1-02-38(2) and (4).  “When the wording of a statute is clear and free of all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.”  N.D.C.C. § 1-

02-05.

[¶19] In 
Skarsgard
, 2007 ND 159, ¶ 1, 740 N.W.2d 64, a defendant claimed criminal judgments for driving under the influence and driving under suspension, which were then on appeal to this Court, were not “convictions” for purposes of sentence enhancement for subsequent guilty verdicts for driving under the influence and driving under suspension.  This Court recognized the enhancement provisions in N.D.C.C. §§ 39-08-01 and 39-06-42 used the term “offense” instead of “conviction” and held the definition of “offense” in N.D.C.C. § 12.1-01-04 applied to these penal provisions of N.D.C.C. title 39.  
Skarsgard
, at ¶¶ 4, 6-7.  Under that statutory definition, we said “offense” means “conduct for which a term of imprisonment or a fine is authorized by statute after conviction.”  
Id.
 at ¶ 6.  We said the prior convictions for driving under suspension and driving under the influence, which were then on appeal to this Court, established the conduct required by the definition of an “offense,” and the district court correctly considered the conduct underlying those convictions as prior offenses to enhance the sentences for the subsequent convictions for DUI and driving under suspension.  
Id.
 at ¶ 7.

[¶20] In 
State v. Irwin
, 2010 ND 132, ¶ 1, 785 N.W.2d 245, we considered the definition of “offense” in the context of an appeal from the denial of a defendant’s motion to withdraw a guilty plea for a fifth conviction in seven years for driving under the influence.  The defendant argued that on the date he drove under the influence in the incident leading to the fifth conviction, his fourth DUI charge was still pending and he had been convicted of only three DUIs in the previous seven years.  
Id.
 at ¶ 7.  We cited 
Skarsgard
 and said the district court “correctly found [the defendant] had four prior DUI convictions in the previous seven years when it accepted his guilty plea” to the fifth DUI and “did not abuse its discretion when it determined [the defendant] did not suffer a manifest injustice” in the denial of his motion to withdraw that guilty plea.  
Id.
 at ¶¶ 8-9.

[¶21] Under 
Skarsgard
 and 
Irwin
, and for the enhancement purposes of N.D.C.C. § 39-06-42(1), an “offense” is defined in N.D.C.C. § 12.1-01-04 as “conduct for which a term of imprisonment or a fine is authorized by statute after conviction.”  The plain language of the statutory definition of offense in N.D.C.C. § 12.1-01-04 defines an offense as a particular class of conduct.  The class of conduct is that conduct for which there is statutory authorization for imposition of a fine or imprisonment after conviction for the conduct.  That a conviction ultimately may be obtained for the conduct does not change that it is the conduct that constitutes the offense.  
See
 
Sauby v. City of Fargo
, 2008 ND 60, ¶ 9, 747 N.W.2d 65 (stating statutory definition of “offense” comports with the plain, ordinary, and commonly understood meaning of the term).  As used in N.D.C.C. title 39, the legislature has separately defined a “conviction” as “a final order or judgment or conviction by the North Dakota supreme court, any lower court having jurisdiction, a tribal court, or a court in another state if an appeal is not pending and the time for filing a notice of appeal has elapsed.”  N.D.C.C. § 39-01-01(13).  
See
 
Skarsgard
, 2007 ND 159, ¶ 4, 740 N.W.2d 64 (discussing similar language in now repealed version of N.D.C.C. § 39-06-30, which was reenacted in N.D.C.C. § 39-01-01(13) in 2013 N.D. Sess. Laws, ch. 291, §§ 1 and 62).

[¶22] The plain language of N.D.C.C. § 39-06-42(1) requires a fourth “offense” within five years for enhancement of the classification of a driving under suspension offense from a class B misdemeanor to a class A misdemeanor.  The plain language of N.D.C.C. § 39-06-42(1) does not require that a conviction has been obtained for the earlier conduct but simply that the earlier conduct is such that a term of imprisonment or fine is authorized by statute after conviction.  Proof of the earlier conduct must be beyond a reasonable doubt.  Because the first three offenses here had resulted in convictions prior to the conviction for the fourth offense, we do not address issues that may arise if any of the prior offenses do not result in a conviction.

[¶23] Here, all four charges against Brown were resolved in a series of separate trials.  When the district court found Brown guilty of the February 18, 2016, offense, it had already found him guilty of the offenses committed in October 2015, December 2015, and January 2016.  These three convictions, although after the fourth offense, established conduct constituting three prior offenses and thus that the February offense was Brown’s fourth offense.  We conclude the court did not err in enhancing the classification of Brown’s conviction for the February 18, 2016, conduct from a class B misdemeanor to a class A misdemeanor for a fourth offense within a five-year period.

IV

[¶24] Brown argues the district court abused its discretion in allowing the State to recall Deputy Barstad in the second trial for additional testimony after the State had rested and Brown had made a motion for judgment of acquittal to the charge of driving under suspension on December 17, 2015.

[¶25] A trial court has broad discretion to control the introduction of evidence at trial, including the calling of additional witnesses.  
See
 
State v. Newark
, 2017 ND 209, ¶¶ 13-18, 900 N.W.2d 807 (holding trial court did not abuse its discretion in allowing State to call rebuttal witness); 
State v. VanNatta
, 506 N.W.2d 63, 70 (N.D. 1993) (same).  A court abuses its discretion if it acts in an arbitrary, unreasonable, unconscionable, or capricious manner, if its decision is not the product of a rational mental process leading to a reasoned determination, or if it misinterprets or misapplies the law.  
Newark
, at ¶ 6.

[¶26] Here, in the second trial, the district court initially sustained Brown’s relevancy objection to a question about statements Brown made to Deputy Barstad during the October 26, 2015, traffic stop.  After both parties rested and the court heard argument about the relevance of Brown’s knowledge of his license suspension, the court reserved the right to revisit its decision in the first trial and requested post-

trial briefs on the issue.  The court thereafter allowed the State to recall Deputy Barstad to testify in the second trial about Brown’s statements during the October 26, 2015, traffic stop and ultimately ruled Brown’s knowledge of his license status was a relevant inquiry.  On this record, we conclude the court did not abuse its discretion in allowing the State to recall Deputy Barstad to testify in the second trial.

V

[¶27] We affirm the judgments.

[¶28] Jerod E. Tufte

Daniel J. Crothers

Lisa Fair McEvers

Jon J. Jensen

Gerald W. VandeWalle, C.J.